No. 2023-1245

# United States Court of Appeals for the Federal Circuit

LASHIFY, INC.
*Appellant*

v.

INTERNATIONAL TRADE COMMISSION,
*Appellee*

QINGDAO HOLLYREN COSMETICS CO. LTD., DBA HOLLYREN, QINGDAO XIZI INTERNATIONAL TRADING CO., LTD., DBA XIZI LASHES, QINGDAO LASHBEAUTY COSMETIC CO., LTD., DBA WORLDBEAUTY, KISS NAIL PRODUCTS, INC., ULTA SALON, COSMETICS & FRAGRANCE, INC., WALMART, INC., CVS PHARMACY, INC., ARTEMIS FAMILY BEGINNINGS, INC., DBA LILAC ST., ALICIA ZENG,
*Intervenors*

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1226

## INTERVENORS' CORRECTED NON-CONFIDENTIAL RESPONSIVE BRIEF

NON-CONFIDENTIAL

Michael Hawes
Lori Ding
**Baker Botts L.L.P.**
910 Louisiana Street
Houston, TX 77002
Phone: (713) 229-1234
michael.hawes@bakerbotts.com
lori.ding@bakerbotts.com

Lisa M. Kattan
Thomas C. Martin
**Baker Botts L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
Phone: (202) 639-7700
lisa.kattan@bakerbotts.com
tommy.martin@bakerbotts.com

Theodore W. Chandler
**Baker Botts L.L.P.**
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
Phone: (213) 202-5702
ted.chandler@bakerbotts.com

*Counsel for Kiss Nail Products, Inc.; Ulta Salon, Cosmetics & Fragrance, Inc.; Walmart, Inc.; and CVS Pharmacy, Inc.*

Mark A. Miller
Elliot Hales
**Dorsey & Whitney LLP**
111 S Main Street, Suite 2100
Salt Lake City, UT 84111
Phone: (801) 933-4068
miller.mark@dorsey.com
hales.elliot@dorsey.com

Hui Shen
**Dorsey & Whitney LLP**
1401 New York Avenue NW
Washington, DC 20005
Phone: (202) 538-0381
shen.hui@dorsey.com

*Counsel for Qingdao Hollyren Cosmetics Co. Ltd., dba Hollyren, Qingdao Xizi International Trading Co., Ltd., dba Xizi Lashes, and Qingdao Lashbeauty Cosmetic Co., Ltd., dba Worldbeauty*

NON-CONFIDENTIAL

Jason R. Bartlett
Mauriel Kapouytian Woods LLP
450 Sansome Street, Suite 1005
San Francisco, CA 94111
Phone: (415) 738-6334
jbartlett@mkwllp.com

Rory Jeffrey Radding
Mauriel Kapouytian Woods LLP
15 W 26th Street, Seventh Floor
New York, NY 10010
Phone: (212) 524-6053
rradding@mkwllp.com

*Counsel for Artemis Family Beginnings, Inc., dba Lilac St. and Alicia Zeng*

November 21, 2023

## PATENT CLAIM LANGUAGE AT ISSUE

### U.S. Patent No. 10,721,984

1. A lash extension comprising:

a plurality of first artificial hairs, each of the first artificial hairs having a first heat fused connection to at least one of the first artificial hairs adjacent thereto in order to form a first cluster of artificial hairs, the first heat fused connection defining a first base of the first cluster of artificial hairs; and

a plurality of second artificial hairs, each of the second artificial hairs having a second heat fused connection to at least one of the second artificial hairs adjacent thereto in order to form a second cluster of artificial hairs, the second heat fused connection defining a second base of the second cluster of artificial hairs, the first base and the second base are included in a common base from which the first cluster of artificial hairs and the second cluster of artificial hairs extend, the first cluster of artificial hairs and the second cluster of artificial hairs are spaced apart from each other along the common base, the common base, first cluster of artificial hairs, and second cluster of artificial hairs collectively forming a lash extension configured to be attached to a user.

**U.S. Patent No. D877,416**

The ornamental design for a storage cartridge for artificial eyelash extensions, as shown and described.



FIG. 1



FIG. 6



FIG. 2



FIG. 4



FIG. 3



FIG. 5



FIG. 7



FIG. 8

NON-CONFIDENTIAL

**U.S. Patent No. D867,664**

The ornamental design for an applicator for artificial lash extensions, as shown and described.



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 23-1245

**Short Case Caption** LASHIFY, INC. v. U.S. ITC

**Filing Party/Entity** Intervenors

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. Please enter only one item per box; attach additional pages as needed and check the relevant box. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 1/17/2023

Signature: /s/ *Michael Hawes*

Name: Michael Hawes

| **1. Represented Entities.** **Fed. Cir. R. 47.4(a)(1).** | **2. Real Party in Interest.** **Fed. Cir. R. 47.4(a)(2).** | **3. Parent Corporations and Stockholders.** **Fed. Cir. R. 47.4(a)(3).** |
|---|---|---|
| **Provide the full names of all entities represented by undersigned counsel in this case.** | **Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.**<br><br>☑ **None/Not Applicable** | **Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.**<br><br>☐ **None/Not Applicable** |
| **Kiss Nail Products, Inc.** | **N/A** | **None** |
| **Ulta Salon, Cosmetics & Fragrance, Inc.** | **N/A** | **Ulta Beauty, Inc.** |
| **Walmart, Inc.** | **N/A** | **None** |
| **CVS Pharmacy, Inc.** | **N/A** | **None** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ **Additional pages attached**

**4. Legal Representatives.** **List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).**

☐ **None/Not Applicable** ☐ **Additional pages attached**

| | | |
|---|---|---|
| Eric Faragi,<br>Baker Botts L.L.P. | Matthew M. Welch,<br>(formerly Baker Botts L.L.P.) | Christopher J. Hong<br>(formerly Baker Botts L.L.P.) |
| Eliot D. Williams<br>Baker Botts L.L.P. | Samuel L. Kassa<br>Baker Botts L.L.P. | Sean Lee<br>Baker Botts L.L.P. |
| | | |

**5. Related Cases.** **Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).**

☐ **None/Not Applicable** ☐ **Additional pages attached**

| | | |
|---|---|---|
| LASHIFY, INC. v. KISS NAIL PRODUCTS, INC.,<br>D. N.J. Case No. 2:20-cv-10023 | LASHIFY, INC. v. ALICIA ZENG D/B/A LILAC ST. ET AL.,<br>N.D. Cal. Case No. 5:20-cv-06086-LHK | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** **Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).**

☑ **None/Not Applicable** ☐ **Additional pages attached**

| | | |
|---|---|---|
| | | |
| | | |

# ***CERTIFICATE OF SERVICE***

It is hereby certified that a copy of the foregoing was served to the parties on January 17, 2023, in the manner indicated below:

| **U.S. INTERNATIONAL TRADE COMMISSION** | |
|---|---|
| Lynde F. Herzbach<br>Wayne W. Herrington<br>**U.S. International Trade Commission**<br>500 E Street, S.W., Suite 112<br>Washington, D.C. 20436<br>lynde.herzbach@usitc.gov<br>wayne.herrington@usitc.gov | [x] By CM/ECF - CAFC<br>[ ] By Email |
| John Shin<br>Jeffrey Hsu<br>Office of Unfair Import Investigations<br>U.S. International Trade Commission<br>500 E Street, S.W., Suite 401<br>Washington, D.C. 20436<br>John.Shin@usitc.gov<br>Jeffrey.Hsu@usitc.gov | [ ] By First Class Mail<br>[ ] By Hand Delivery<br>[ ] By Overnight Courier<br>[ ] By Facsimile<br>[x] By Email |
| **PETIONER-APPELLANT LASHIFY, INC.** | |
| Saina S. Shamilov<br>Bryan A. Kohm<br>**FENWICK & WEST LLP**<br>801 California Street<br>Mountain View, CA 94041<br>sshamilov@fenwick.com<br>bkohm@fenwick.com | [x] By CM/ECF - CAFC<br>[ ] By Email |
| Todd R. Gregorian<br>**FENWICK & WEST LLP**<br>555 California Street, 12th Fl.<br>San Francisco, CA 94104<br>tgregorian@fenwick.com | [x] By CM/ECF - CAFC<br>[ ] By Email |

Case: 23-1245 Document: 3 Page: 5 Filed: 01/17/2023

| **RESPONDENTS QINGDAO HOLLYREN COSMETICS CO., LTD. D/B/A HOLLYREN; QINGDAO XIZI INTERNATIONAL TRADING CO., LTD. D/B/A XIZI LASHES; QINGDAO LASHBEAUTY COSMETIC CO., LTD. D/B/A WORLDBEAUTY** | |
|---|---|
| John M. Caracappa<br>Matthew Bathon<br>Hui Shen<br>Li Guo<br>**STEPTOE & JOHNSON, LLP**<br>1330 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>jcaracappa@steptoe.com<br>mbathon@steptoe.com<br>hshen@steptoe.com<br>lguo@steptoe.com | [x] By CM/ECF - CAFC<br>[ ] By Email |
| **RESPONDENT ALICIA ZENG D/B/A LILAC ST., ARTEMIS FAMILY BEGINNINGS, INC.** | |
| Jason R. Bartlett<br>**MAURIEL KAPOUYTIAN WOODS LLP**<br>450 Sansome Street, Suite 1005<br>San Francisco, CA 94111<br>jbartlett@mkwllp.com | [ ] By First Class Mail<br>[ ] By Hand Delivery<br>[ ] By Overnight Courier<br>[ ] By Facsimile<br>[x] By Email |
| Rory J. Radding<br>**MAURIEL KAPOUYTIAN WOODS LLP**<br>15 W. 26th Street, 7th floor<br>New York, NY 10010<br>rradding@mkwllp.com | [ ] By First Class Mail<br>[ ] By Hand Delivery<br>[ ] By Overnight Courier<br>[ ] By Facsimile<br>[x] By Email |

DATE: January 17, 2023

*/s/ Michael Hawes*
Michael Hawes

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1245

**Short Case Caption** Lashify, Inc. v. ITC

**Filing Party/Entity** QINGDAO HOLLYREN COSMETICS CO., LTD d/b/a HOLLYREN

**Instructions: Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. Please enter only one item per box; attach additional pages as needed and check the relevant box. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).**

**I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.**

**Date:** 01/13/2023

**Signature:** John Caracappa

**Name:** John Caracappa

FORM 9. Certificate of Interest | Form 9 (p. 2) July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☑ None/Not Applicable |
| Qingdao Hollyren Cosmetics Co., Ltd d/b/a Hollyren | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Yueyue Wang of Steptoe & Johnson, LLP | Matthew Bathon of Steptoe & Johnson, LLP | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Lashify, Inc. v. Kiss Nail Products, Inc., D. N.J. Case No. 2:20-cv-10023 | Lashify, Inc. v. Alicia Zeng d/b/a Lilac St. et al. N.D. Cal Case No. 5:20-cv-06086-LHK | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1245

**Short Case Caption** Lashify, Inc. v. ITC

**Filing Party/Entity** Artemis Family Beginnings, Inc., d/b/a Lilac St.; Alicia Zeng

**Instructions: Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. Please enter only one item per box; attach additional pages as needed and check the relevant box. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).**

**I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.**

**Date:** 02/02/2023

**Signature:** /s/ Jason R. Bartlett

**Name:** Jason R. Bartlett

**FORM 9. Certificate of Interest** **Form 9 (p. 2)**
**July 2020**

| **1. Represented Entities.**<br>**Fed. Cir. R. 47.4(a)(1).** | **2. Real Party in Interest.**<br>**Fed. Cir. R. 47.4(a)(2).** | **3. Parent Corporations and Stockholders.**<br>**Fed. Cir. R. 47.4(a)(3).** |
|---|---|---|
| **Provide the full names of all entities represented by undersigned counsel in this case.** | **Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.**<br><br>[4] **None/Not Applicable** | **Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.**<br><br>[4] **None/Not Applicable** |
| **Artemis Family Beginnings, Inc., d/b/a Lilac St.** | | |
| **Alicia Zeng** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ **Additional pages attached**

**4. Legal Representatives.** **List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).**

☐ **None/Not Applicable** ☐ **Additional pages attached**

| | | |
|---|---|---|
| Rory J. Radding, Partner<br>Mauriel Kapouytian Woods LLP | | |
| | | |
| | | |

**5. Related Cases.** **Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).**

☐ **None/Not Applicable** ☐ **Additional pages attached**

| | | |
|---|---|---|
| LASHIFY, INC. v. ZENG ET AL.<br>Case No. 3:20-cv-06086-WHO (N.D. Cal.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** **Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).**

☒ **None/Not Applicable** ☐ **Additional pages attached**

| | | |
|---|---|---|
| | | |
| | | |

Case: 23-1245 Document: 6 Page: 1 Filed: 01/13/2023

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1245

**Short Case Caption** Lashify, Inc. v. ITC

**Filing Party/Entity** QINGDAO LASHBEAUTY COSMETIC CO., LTD d/b/a WORLDBEAUTY

| |
|---|
| **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. Please enter only one item per box; attach additional pages as needed and check the relevant box. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b). |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

**Date:** 01/13/2023

**Signature:** John Caracappa

**Name:** John Caracappa

| **1. Represented Entities.**<br>**Fed. Cir. R. 47.4(a)(1).** | **2. Real Party in Interest.**<br>**Fed. Cir. R. 47.4(a)(2).** | **3. Parent Corporations and Stockholders.**<br>**Fed. Cir. R. 47.4(a)(3).** |
|---|---|---|
| **Provide the full names of all entities represented by undersigned counsel in this case.** | **Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.**<br><br>☑ **None/Not Applicable** | **Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.**<br><br>☑ **None/Not Applicable** |
| QINGDAO LASHBEAUTY COSMETIC CO., LTD d/b/a WORLDBEAUTY | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ **Additional pages attached**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Yueyue Wang of Steptoe & Johnson, LLP | Matthew Bathon of Steptoe & Johnson, LLP | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Lashify, Inc. v. Kiss Nail Products, Inc., D. N.J. Case No. 2:20-cv-10023 | Lashify, Inc. v. Alicia Zeng d/b/a Lilac St. et al. N.D. Cal Case No. 5:20-cv-06086-LHK | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1245

**Short Case Caption** Lashify, Inc. v. ITC

**Filing Party/Entity** QINGDAO XIZI INTERNATIONAL TRADING CO., LTD d/b/a XIZI LASHES

**Instructions: Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. Please enter only one item per box; attach additional pages as needed and check the relevant box. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).**

**I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.**

**Date:** 01/13/2023

**Signature:** John Caracappa

**Name:** John Caracappa

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| QINGDAO XIZI INTERNATIONAL TRADING CO., LTD d/b/a XIZI LASHES | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Yueyue Wang of Steptoe & Johnson, LLP | Matthew Bathon of Steptoe & Johnson, LLP | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Lashify, Inc. v. Kiss Nail Products, Inc., D. N.J. Case No. 2:20-cv-10023 | Lashify, Inc. v. Alicia Zeng d/b/a Lilac St. et al. N.D. Cal Case No. 5:20-cv-06086-LHK | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ..... XXVI

JURISDICTIONAL STATEMENT ..... XXVII

I. INTRODUCTION ..... 1

II. STATEMENT OF THE ISSUES ..... 5

III. STATEMENT OF THE CASE ..... 6

A. Lashify's Excluded Evidence of Its Origin Story Should Not Be Considered in the First Instance. ..... 6

B. Lashify Fails to Justify Its Decision to Manufacture Overseas ..... 7

C. Lashify Did Not Create a New Market Segment. ..... 8

D. Procedural History ..... 10

IV. SUMMARY OF THE ARGUMENT ..... 12

V. ARGUMENT ..... 14

A. Standard of Review ..... 14

B. Lashify Failed to Meet Its Burden of Proof to Satisfy the Economic Prong of the Domestic Industry Requirement. ..... 15

1. Lashify Is a Mere Importer. ..... 17

2. Lashify Forfeited Its Ability to Rely on the Labor and Capital Expenses Related to the Vast Majority of Its Relevant R&D ..... 21

3. Lashify's Alleged Investments in Labor and Capital Are Unsupported, Unreliable, and Exaggerated. ..... 23

a) Lashify's Minimal Post-2017 Investments in Labor and Capital Related to Domestic R&D Are Dwarfed by Lashify's Foreign Investments. ..... 23

b) Lashify's Alleged Post-2017 Investments in Labor Are Contradicted by the Record and Unreliable. ..... 27

c) Lashify's Alleged Post-2017 Investments in Capital Are Over-Inclusive and Unreliable. ..... 29

4. Lashify Failed to Show that Its Other Domestic Activities Add Any Value to the Covered Products. ..... 30

a) Lashify Failed to Show that Any Value Is Added to Its Lash Extensions ('984 Patent) in the United States. ..... 32

b) Lashify Failed to Show that Any Value Is Added to Its Storage Cartridge (D’416) in the United States.................. 33

c) Lashify Failed to Show that Any Value Is Added to Its Applicator (D’644) in the United States. ............................ 34

C. The Commission Correctly Construed “Heat Fused” as Requiring Fibers Merged into a “Single Entity.” ....................................................35

1. Lashify Does Not Challenge the Commission’s Findings that It Cannot Meet the Technical Prong of Domestic Industry Even Under its Own Construction. ..............................................35

2. Lashify Continues Its Quest for a Construction that Abandons the Plain Meaning of “Fused” Contrary to the Intrinsic Evidence. ..........................................................................37

3. The Commission Properly Looked to a Dictionary Definition Cited by the Parties in Explaining How a Connection Is Fused When It Forms a Single Entity. .....................................................42

D. Lashify Cannot Establish a Violation of Section 337 Even if It Prevails on Both of the Issues Raised Here. ............................................46

VI. CONCLUSION .........................................................................................48

## **CONFIDENTIAL MATERIAL OMITTED**

Material omitted from brief pages 3 and 9 contains confidential information about Intervenor-Respondents’ product manufacturing process that was previously designated by Intervenor-Respondents as confidential business information before the International Trade Commission. Material omitted from brief pages 6 and 8 contains personal information about Lashify’s founder. The material omitted from brief pages 7 and 8 is confidential information about Appellant Lashify’s sales information related to its covered products and was previously designated by Lashify as confidential business information before the International Trade Commission. The material omitted from brief pages 18, 29, and 30 is confidential information about Appellant Lashify’s investments and finances and was previously designated by Lashify as confidential business information before the International Trade Commission. The material omitted from brief pages 25, 45 contains confidential information about Appellant Lashify’s manufacturing processes for its eyelash products and was previously designated by Lashify as confidential business information before the International Trade Commission.

NON-CONFIDENTIAL

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*3M Innovative Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013) ....................43

*Apple Inc. v. Corephotonics, Ltd.*,
81 F.4th 1353 (Fed. Cir. 2023) ....................39

*Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*,
533 F.3d 1362 (Fed. Cir. 2008) ....................42

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021) ....................45

*Broadcom Corp. v. Int'l Trade Comm'n*,
28 F.4th 240 (Fed. Cir. 2022) ....................14

*Certain Bone Cements, Components Thereof & Prods. Containing the Same*,
Inv. No. 337-TA-1153, Comm'n Op., 2021 WL 287860 (Jan. 25, 2021) .........21

*Certain Cube Puzzles*,
Inv. No. 337-TA-112, Comm'n Op., 1982 WL 974906 (Dec. 30, 1982) ..........31

*Certain Elec. Candle Prods. & Components Thereof*,
Inv. No. 337-TA-1195, Comm'n Op. at 8 (Sept. 13, 2021) ....................20

*Certain Foodservice Equip. & Components Thereof*,
Inv. No. 337-TA-1166, Comm'n Op., 2021 WL 5104821 (Oct. 29, 2021).......20

*Certain Male Prophylactic Devices*,
Inv. No. 337-TA-546, Comm'n Op., 2007 WL 9772268 (Aug. 1, 2007)..........31

*Certain Percussive Massage Devices*,
Inv. No. 337-TA-1206, Comm'n Op., 2022 WL 59156 (Jan. 4, 2022)........18, 19

*Certain Stringed Musical Instruments & Components Thereof*,
Inv. No. 337-TA-586, Comm'n Op. at 26 (May 16, 2008)....................22

*Certain Television Sets, Television Receivers, Television Tuners, & Components Thereof*,
Inv. No. 337-TA-910, Comm'n Op. at 58 (Oct. 30, 2015) ....................47

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ....................................................................38

*Eaton Corp. v. Rockwell Int'l Corp.*,
323 F.3d 1332 (Fed. Cir. 2003) ....................................................................37

*Engel Indus., Inc. v. Lockformer Co.*,
166 F.3d 1379 (Fed. Cir. 1999) ....................................................................37

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
93 F.3d 1572 (Fed. Cir. 1996) ......................................................................39

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) .....................................................................15

*Lelo Inc. v. Int'l Trade Comm'n*,
786 F.3d 879 (Fed. Cir. 2015) ..................................................................14, 22

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
29 F.4th 1376 (Fed. Cir. 2022) .....................................................................38

*Moseley v. V Secret Catalogue, Inc.*,
537 U.S. 418 (2003).........................................................................................46

*Motiva, LLC v. Int'l Trade Comm'n*,
716 F.3d 596 (Fed. Cir. 2013) ........................................................................7

*Schaper Mfg. Co. v. Int'l Trade Comm'n*,
717 F.2d 1368 (Fed. Cir. 1983) ..........................................1, 17, 19, 20, 21, 31

*Sulzer Textil A.G. v. Picanol N.V.*,
358 F.3d 1356 (Fed. Cir. 2004) ....................................................................47

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
15 F.4th 1121 (Fed. Cir. 2021) .....................................................................45

*Unwired Planet, LLC v. Apple Inc.*,
829 F.3d 1353 (Fed. Cir. 2016) ....................................................................45

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) ....................................................................38

**Statutes**

5 U.S.C. §§ 556(d), 557(b) ....................22

19 U.S.C. § 1337(a)(2) ....................7, 20, 35, 47

35 U.S.C. § 1337 ....................1, 15

## STATEMENT OF RELATED CASES

Intervenors Qingdao Hollyren Cosmetics Co. Ltd., d/b/a Hollyren ("Hollyren"); Qingdao Xizi International Trading Co., Ltd., d/b/a Xizi Lashes ("Xizi"); Qingdao Lashbeauty Cosmetic Co., Ltd., d/b/a Worldbeauty ("Worldbeauty"); Kiss Nail Products, Inc. ("KISS"); Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta"); Walmart, Inc. ("Walmart"); CVS Pharmacy, Inc. ("CVS"); and Alicia Zeng d/b/a Lilac St. and Artemis Family Beginnings, Inc. ("Lilac") agree with the statement of related cases provided by Appellant Lashify, Inc. ("Lashify").

## JURISDICTIONAL STATEMENT

Intervenors Hollyren, Xizi, Worldbeauty, KISS, Ulta, Walmart, CVS, and Lilac (collectively, "Intervenors") agree with the jurisdictional statement provided by Lashify.

# I. INTRODUCTION

Lashify asks this Court to do what only Congress can do—broaden the definition of 35 U.S.C. § 1337 ("Section 337"). *See Schaper Mfg. Co. v. Int'l Trade Comm'n*, 717 F.2d 1368, 1373 (Fed. Cir. 1983). The Commission reasonably applied the statute's domestic industry requirement through the lens of comparing the limited record evidence of Lashify's operations to actions that would be undertaken by a product importer. Lashify's business of maximizing potential customers' desire and ability to purchase imported products is domestic distribution—not domestic industry.

Setting aside that only Congress can provide the relief Lashify seeks, the record here also does not support such relief. Lashify failed to present sufficient evidence to establish the existence of either the economic prong or the technical prong of the domestic industry requirement for the lone utility patent that survived until the evidentiary hearing. Lashify chose not to seek third-party discovery from its own (overseas) manufacturers.[1] Appx00051 (referring to Lashify's "decision to not provide discovery regarding its manufacturing"). Instead, Lashify chose to rely almost exclusively on the uncorroborated testimony of its founder and CEO, Ms.

[1] Lashify attempted to rely only on a pair of two-page declarations from its two foreign manufacturers that were inadmissible under the Administrative Law Judge's ("ALJ's") Ground Rules. Appx00019-00020; Appx21732-21733; Appx27837. Lashify does not challenge that ruling and "failed to provide evidence of the manufacturing processes used by its two manufacturers." Appx00019.

Sahara Lotti. Appx00021 ("Lashify's main evidence regarding [Manufacturer I's] manufacturing process was testimony from the named inventor/CEO, Ms. Lotti."); Appx00030 ("Other than Ms. Lotti's testimony, there is no other record evidence of [Manufacturer II's] manufacturing process."). But a significant portion of her testimony was struck as untimely and prejudicial, while other portions of her testimony are contradicted by the record evidence. Lashify's evidence regarding the domestic industry requirement was both too little and too late.

Having lost its technical prong arguments and the vast majority of its infringement arguments before the Commission, Lashify now asks this Court to undo the Commission's well-reasoned claim construction so Lashify can use what it learned during the underlying investigation to recapture subject matter it unambiguously acknowledged was not covered by the term "heat fused" in U.S. Patent No. 10,721,984 ("'984 Patent"). During the *Markman* hearing on this term, Lashify's counsel stated that Lashify was "fine" with a construction that requires "'join[ed] together by ***applying*** heat' so the artificial hairs and clusters connect." Appx08600 (emphasis added). Lashify's counsel also acknowledged that the construction sought by Lashify was not "designed to cover ***simple gluing*** or just simple ***exposure to heat*** without more." Appx08643 (emphases added). Yet, that is precisely what Lashify seeks in its construction here.

For example, Lashify now attempts to replace "***applying*** heat" with "***using***

heat," despite stating it was "fine" with that language during the *Markman* hearing. *Compare* Lashify Br. at 54-55, *with* Appx08600. Lashify also attempts to capture a decades-old lash-curling technique (*i.e.*, a technique that involves simple gluing and exposure to heat) within the scope of "heat fusion," despite acknowledging at the *Markman* hearing that "curling is ***not*** heat fusion." *Compare* Lashify Br. at 17 (describing "[a]n adhesive . . . used to hold the fibers together" and "the fibers . . . used with a tool, and the tool and lashes [being] placed in an oven at approximately temp°C for # minutes" as "heat fusion"); Appx28701 (describing the curling process used to make KISS's accused products as placing the tool with the lashes tool them in an oven set so that the ambient air in the oven is at approximately temp°C for # minutes"), *with* Appx08596 ("What Udes talks about is you weave lashes into a particular structure, and then you curl them. And curling is ***not*** heat fusion.") (emphasis added); Appx08597 ("[C]urling is ***not*** heat fusing. Heat fusion has a different sort of -- it's a different methodology.") (emphasis added). Lashify's attempt to capture this subject matter not only contradicts its previous representations to the Commission, but it also flies in the face of both the intrinsic and extrinsic record of the '984 Patent. It should therefore be rejected.

Regardless, Lashify could not satisfy the economic prong of the domestic industry requirement even if none of its domestic investments were excluded from consideration ***and*** it received the claim construction it seeks here. Lashify failed to

adduce sufficient evidence of representativeness of its alleged domestic industry products during the underlying investigation. *See* Appx00017 (noting how Lashify's technical expert "did not test and examine each of the domestic industry products and instead stated, without explanation or support, that certain domestic industry products were representative of others"). Lashify would therefore only be able to rely on a small subset of its alleged domestic industry products to satisfy the economic prong of the domestic industry requirement. But Lashify never took that possibility into consideration in its analysis, making it impossible to determine what portion of Lashify's domestic investments can actually be relied upon based on the few products actually analyzed.

## II. STATEMENT OF THE ISSUES

1. Whether the Commission properly analyzed Lashify's evidence of expenditures as not counting toward a "significant employment of labor or capital" "with respect to the articles protected by the patent" "in the United States" under § 1337(a)(3)(B) ("Subsection (B)") because Lashify's only evidence for the vast majority of domestic expenditures concerned merely maximizing distribution of imported products.

2. Whether the Commission erred in adopting the ALJ's construction of "heat fused" as requiring fibers to merge into a "single entity" that cannot "easily be separated."

## III. STATEMENT OF THE CASE

The vast majority of Lashify's "Statement of the Case" is simply irrelevant. *First*, as it also did before the Commission, Lashify improperly attempts to rely on pre-2017 evidence of its entry into the market that was excluded from the record. Lashify Br. at 6-8; Appx00049. *Second*, Lashify inappropriately blames its lack of domestic manufacturing on others, despite identifying tens of millions of dollars in profits that it used to rent a place rather than investing in its own domestic manufacturing facilities. Lashify Br. at 8, 43. *Third*, Lashify claims to have created a new market segment without tying it to any activity other than the $9,000,000 it claims to have spent on marketing. *Id.* at 9-10. None of this addresses Lashify's glaring evidentiary failures, or the fact that the evidence shows that Lashify invests more in "industry" (as opposed to advertising) abroad than in the United States.

### A. Lashify's Excluded Evidence of Its Origin Story Should Not Be Considered in the First Instance.

In its appeal, Lashify attempts to revive pre-2017 evidence, such as how its lash extensions, applicator, and storage cartridge were created, as well as uncorroborated claims that "Ms. Lotti worked around the clock" on these efforts and created "countless" prototypes. Lashify Br. at 7, 15, 51. But this evidence was excluded from the ITC record:

> Before the Commission, Lashify attempts to rely on pre-2017 evidence that was excluded. In accordance with Order No. 55, most of Lashify's evidence based on pre-

> 2017 "start-up" or "sweat equity" activities is untimely and will not be considered.

Appx00049 (citations omitted); *see also* Appx19058-19066; Appx27867. As the Commission determined, "Lashify has therefore abandoned any challenge to that order." Appx00049. On appeal Lashify does not challenge the order which excluded this evidence.

**B. Lashify Fails to Justify Its Decision to Manufacture Overseas.**

Lashify fails to reconcile its claim that it "wanted to" manufacture its product domestically with its claim that it has experienced "tremendous growth" in the United States.[2] Lashify Br. at 8. Setting aside that what Lashify allegedly "wanted to" do is irrelevant to the domestic industry inquiry,[3] Lashify's alleged "tremendous growth" should have allowed it to do whatever it wanted, including developing a manufacturing presence in the United States. Yet, Lashify chose not to.

Intervenors do not dispute that Lashify generated over $[redacted] million in

---

[2] Lashify's claim that it "employed nearly 100 people at the time of the ITC investigation" is misleading, at best. Lashify Br. at 8, *see also id.* at 2, 48-49. The relevant time period for establishing the existence of a domestic industry under Section 337 is the date the complaint was filed. *See Motiva, LLC v. Int'l Trade Comm'n*, 716 F.3d 596, 601 n.6 (Fed. Cir. 2013). At that time, Lashify employed "approximately 40 people in the United States"—less than half of the number of people referred to in its brief. Appx00515, ¶ 284; *see also* Appx19121, ¶ 6.

[3] What Lashify "wanted to" do would not even be relevant to a claim that it was in the process of establishing a domestic industry under 19 U.S.C. § 1337(a)(2), a claim that Lashify never made and so was not considered by the Commission. *Cf. Motiva*, 716 F.3d at 601.

revenue in 2020 alone and expected that number to change in 2021. Appx29563. But Lashify's staggering profit margin of # % is achieved through its use of foreign contract manufacturers, rather than through investments in a domestic industry. Appx30770; *see also* Lashify Br. at 43 (claiming to have realized "approximately $# million greater than the cost of manufacturing [its] products overseas"). Rather than invest this significant profit into domestic manufacturing, Lashify chose to invest its profits in other projects, including a beach house in Santa Monica, California, which primarily served as Ms. Lotti's place. Appx12825-12827; Appx13108; Appx13288-13289; Appx37212; Appx48795-48796. Lashify therefore fails to justify its decision to manufacture overseas.

### C. Lashify Did Not Create a New Market Segment.

Lashify did not invent do-it-yourself ("DIY") lashes. For example, Intervenor KISS has been in this market since at least 2011. Appx55921. KISS not only launched a segmented lash—its "Trio" product—years before Ms. Lotti claims to have invented Lashify's "DIY lash extension system" (Appx55921; Apppx55685), it launched a segmented lash that could be applied "underneath" one's natural lashes—its "Quattro" product—before Ms. Lotti claims to have invented Lashify's "DIY lash extension system" (Appx42181-42182; Appx62053-62054; Appx69534-69543). KISS also introduced the market to the "DIY lash extension system" itself, offering a "starter kit" for its DIY "Ever EZ Lashes" that included lash extensions,

a glue, and an applicator as early as December 2011. Appx72327.

Lashify is aware of KISS's contributions to the market. In fact, Ms. Lotti acknowledged purchasing [redacted] "in bulk" and applying them ***herself*** (*i.e.*, DIY) while trying to develop her own lash product. Appx66137; Appx66140; Appx66382; Appx66585-66586. She even admitted to using the [redacted] product as a "point of reference" when conveying to her manufacturer what she wanted her own lash extensions to look like. Appx55281-55282; Appx66376-66379; *see also* Appx56537 (describing Lashify's lash extensions as "multi layered [redacted]").

Lashify also took inspiration from [redacted] lash glue, or bond—another key component of a "DIY lash extension system." Specifically, Lashify identified the "glue that works best" as one "made by [redacted]" and asked that their own have "similar ingredients":

> I have attached a pic below of ***the glue that works best***. It is ***made by*** [redacted] . . . . Preferably the glue should have these ***similar ingredients*** with the lace of [redacted] that we spoke of and the [redacted] which was a very good [redacted].

Appx67053 (emphases added). And Lashify's request that the bond also include "[redacted]" (a vitamin) was taken from other "makers/brands in Korea":

> Sahara has identified ***makers/brands in Korea*** that have made eyelash adhesive with the [redacted] story. This is an ***important feature*** that Lashify wants to incorporate.

Appx67147 (emphases added); *see also* Appx67189. Lashify also emulated KISS's "BB Duo" dual-sided glue container when selecting the packaging for its own glue.

Appx62820. Thus, Lashify did not "create" the market for DIY lashes; they entered it late and on the shoulders of others.

### D. Procedural History

Lashify's initial complaint identified nine proposed respondents and alleged infringement of four patents (two utility patents and two design patents). Appx06932-06933. All of the proposed respondents but one[4] made appearances and participated in the resulting investigation through the Commission's final determination. Appx00121-00122.

Lashify was unable to prove a violation of Section 337 had occurred and suffered significant losses along the way to the Commission's final determination. The Chief ALJ's ("CALJ's") determined that there was no genuine issue of fact that Lashify would ***not*** be able to prove that the technical prong of the domestic industry requirement was satisfied as to one of the asserted utility patents—U.S. Patent No. 10,660,388 ("'388 Patent"). Appx18776-18782; Appx27870-27873; Appx31361. The CALJ struck large swaths of the written direct testimony of Lashify's founder, Ms. Lotti, that related to the economic prong of the domestic industry requirement. Appx00020; Appx19058-19066; Appx27867. And Lashify was forced to withdraw the only evidence it obtained from its two foreign manufacturers because it was not

[4] Rachael Gleason d/b/a Avant Garde Beauty "elected not to participate due to the cost of litigation" and was terminated pursuant to a Consent Order. Appx15341-15344; Appx31361; Appx72338.

admissible under the ALJ's Ground Rules. Appx21732-21733; Appx27837. The only one of these setbacks that Lashify even attempted to challenge was the ruling that it could not satisfy the technical prong as to the '388 Patent. Appx18796-18812. But the Commission confirmed that "there is no violation of section 337 with respect to the '388 patent based on Lashify's failure to demonstrate that its products practice the '388 patent." Appx27871. Regardless, neither the '388 Patent nor any of these other evidentiary issues are the subject of Lashify's appeal here.

Due to these and other evidentiary shortcomings, Lashify failed to carry its burden on nearly every disputed issue. Lashify escaped with the validity of its patents, which it did not bear the burden of proving, while establishing infringement as to only three of eight Intervenors[5] and only a small subset of their accused products.[6] On the other hand, Lashify ***failed*** to (1) establish infringement by the majority of the Intervenors and 45 of the 49 accused products, (2) establish that ***any*** of its own products practice the one surviving utility patent (*i.e.*, the technical prong of the domestic industry requirement), (3) establish that it made significant or substantial domestic investments in the products it claimed were covered by the

---

[5] Only Worldbeauty was found to infringe the '984 Patent (Appx00005-00006; Appx00190-00198), and only Hollyren and Xizi were found to infringe U.S. Design Patent Nos. D877,416 and D867,664 (Appx00006; Appx00230-00237).

[6] Only two of Worldbeauty's thirty-six accused lash extensions were found to infringe the '984 Patent (Appx00005-00006; Appx00181-00198), while none of Hollyren's or Xizi's lash extensions were found to infringe the '984 Patent (Appx00005-00006; Appx00169-00180).

Asserted Patents under ***any*** of the three subsections of Section 337(a)(3) (*i.e.*, the economic prong of the domestic industry requirement), (4) establish that infringement of the Asserted Patents was widespread (*i.e.*, a fact that would have warranted the general exclusion order requested by Lashify), and (5) establish that circumvention of the Commission's remedial orders was likely (*i.e.*, another fact could have independently warranted the general exclusion order requested by Lashify). Appx00005-00006; Appx00014; Appx00023; Appx00031; Appx00054-00058; Appx276-00277; Appx00280-00281; Appx10871-10873; Appx20135-20136; Appx29584-29585; Appx48099; Appx48647.

In contrast to the many losing arguments and evidentiary issues Lashify has abandoned or waived, Lashify raises only two discrete issues for appeal. It challenges the Commission's determination that Lashify failed to satisfy the economic prong of the domestic industry requirement under one of the three subsections of Section 337(a)(3)—specifically, Subsection (B)—and the Commission's construction of the term "heat fused"—a term that was central to the Commission's findings of non-infringement and lack of technical prong for the sole surviving utility patent. Both challenges should be rejected.

## IV. SUMMARY OF THE ARGUMENT

The Commission properly looked to the nature and extent of Lashify's domestic investments as a whole and determined that Lashify failed to meet its

burden to satisfy the economic prong of the domestic industry requirement under Section 1337(a)(3)(B). Based on the investments that Lashify presented, the Commission had substantial evidence to find that Lashify is a mere importer. And the evidence that Lashify relies on now was either struck or contradicted by other record evidence. Lashify forfeited its reliance on the labor and capital expenses related to most of its R&D investments, which occurred before 2017, because that evidence was struck from the record, and Lashify fails to challenge that order. The Commission found the alleged investments since 2017 on which Lashify relies to be unsupported, unreliable, and not substantial. Nor did Lashify produce any evidence showing that its other domestic activities add any value to its Covered Products.

The Court also should reject Lashify's proposed construction of "heat fused" as "joined using heat." As an initial matter, Lashify has not shown that its purported error is prejudicial because it cannot meet the technical prong of domestic industry even under its own proposed construction based on the Commission's unchallenged findings that Lashify's lashes are not joined using heat. In any event, the Commission correctly construed "heat fused" as requiring fibers merged into a "single entity." Simply connecting the fibers using heat, as Lashify suggests, would improperly render the term "fused" as mere surplusage and is rejected by the specification, which distinguishes a "connection" between hairs and "fused" hairs. A dictionary definition of "fuse" as "join, blend, or coalesce to form a single

entity”—cited by both parties—provides further support for the Board’s construction of “heat fused.”

Finally, Lashify cannot show a violation of Section 337 even if it prevails on the two limited issues it raises on appeal. Lashify failed to put forward sufficient evidence of representativeness of its alleged domestic industry products during the underlying investigation. Its expert tested only three of sixteen of its alleged domestic industry products and then stated, without explanation or support, that those three products were representative. Because Lashify failed to establish representativeness across all its products, Lashify cannot satisfy the economic prong of the domestic industry requirement even if none of its domestic investments were excluded from consideration and it received the claim construction it now seeks.

Accordingly, the Court should affirm the Commission’s denial of the exclusion order sought by Lashify.

## V. ARGUMENT

### A. Standard of Review

The complainant “asserting patent rights under §337 must satisfy the ‘domestic industry’ requirement set out in the statute.” *Lelo Inc. v. Int’l Trade Comm’n*, 786 F.3d 879, 883 (Fed. Cir. 2015). This Court reviews the Commission’s finding regarding domestic industry for substantial evidence. *Broadcom Corp. v. Int’l Trade Comm’n*, 28 F.4th 240, 250 (Fed. Cir. 2022) (“[T]he Commission's

finding that Broadcom failed to satisfy the domestic industry requirement of Section 337 was supported by substantial evidence.”).

The Federal Circuit reviews the Commission’s claim constructions *de novo* and reviews any subsidiary factual findings based on extrinsic evidence for substantial evidence. *Kyocera Senco Indus. Tools Inc. v. Int’l Trade Comm’n*, 22 F.4th 1369, 1378 (Fed. Cir. 2022).

### B. Lashify Failed to Meet Its Burden of Proof to Satisfy the Economic Prong of the Domestic Industry Requirement.

Lashify tried, and failed, to prove that it had established a domestic industry under all three prongs of Section 337(a)(3), but now only challenges the Commission’s domestic industry findings under Subsection (B). Lashify Br. at 5, 31 n.9. The question for this Court regarding domestic industry is solely an evidentiary one: whether the Commission properly excluded certain alleged economic prong allegations that were untimely or lacked corroboration, and properly weighed the remaining evidence regarding Lashify’s alleged domestic investments in the “employment of labor or capital” related to articles protected by the patents. 35 U.S.C. § 1337(a)(3)(B).

Lashify made the following errors and omissions (and many others) in the context of Subsection (B) alone:

- Lashify forfeited its right to rely on evidence of pre-2017 labor and capital in “start-up” or “sweat equity” activities. *See infra* § V.B.2.

- Lashify declined to obtain discovery from its foreign manufacturers and exaggerated its domestic investments in post-2017 R&D comparted to investments in R&D that occurred abroad. *See infra* § V.B.3.a).

- Lashify overstated the amount of ***labor*** dedicated to R&D domestically by relying solely on the uncorroborated and contradicted testimony of CEO/inventor Ms. Lotti. *See infra* § V.B.3.b).

- Lashify overstated the amount of ***capital*** dedicated to R&D domestically by relying on domestic investments that are not cognizable under any metric (***e.g.***, $334,168 on meals). *See infra* § V.B.3.c).

- Lashify failed to adduce evidence that any of its non-R&D domestic activities add value to the covered products. *See infra* § V.B.4.

Lashify also omitted very basic information, such as whether its storage cartridge is manufactured outside of the United States (*see infra* § V.B.4.b)) and separately identifying the costs associated with the "finishing steps" allegedly performed on its applicator in the United States (*see infra* § V.B.4.c)). Together, these errors and omissions were fatal to Lashify's domestic industry claim.

What little evidence there was of Lashify's domestic activities show that Lashify is a mere importer that does not qualify for protection under Section 337. Lashify is a mere importer because, as Ms. Lotti explained, it is a "lash business [conducted] ***mostly out of Korea***" (Appx55280 (emphasis added)) with domestic employees that are "all . . . people [that were hired] for something that ***doesn't require training or skill***"—primarily, sales, marketing, and distribution activities

(Appx68431 (emphasis added)). Lashify operates mostly out of Korea because, as Lashify acknowledges, it has "No Domestic Manufacturing Options." Lashify Br. at 8. Lashify also "does not operate brick-and-mortar stores" in the United States. Appx30126. Nor does Lashify maintain office space in traditional office buildings. *Id.*; *see also* Appx13287; Appx13289; Appx48793; Appx48795-48796.[7]

The Commission was correct to reject Lashify's evidence and find that Lashify does not qualify for protection under Section 337.

#### 1. Lashify Is a Mere Importer.

Contrary to Lashify's assertion, the Commission did ***not*** look at Lashify's domestic investments in isolation and exclude them line-by-line based on whether they were ***typical of*** a mere importer. Lashify Br. at 44-51. The Commission looked at the "nature and extent" of Lashify's domestic investments as a whole and determined that Lashify ***is*** a mere importer ***because of*** those investments. Appx00052 (finding the "***nature and extent*** of the non-cognizable expenses"

---

[7] Lashify describes its lack of offices as "modernism" and insists that Section 337's domestic industry requirement must be revisited to ensure that "a 21st-century company" like Lashify falls under its protections. Appx30126; Lashify Br. at 39 (asking this Court to expand Section 337 to protect companies, "even if that company does not manufacture the patented articles in the United States, and even if it that company does not first prove other 'qualifying expenses' under the other subsections of the statute"). To the extent the realities of the 21st-century marketplace require expansion of Section 337 to protect mere importers like Lashify, "it is for Congress, not the courts or the Commission, to legislate that policy." *Schaper*, 717 F.2d at 1373.

identified by Lashify as "fatal to Lashify's subsection A arguments") (emphasis added); Appx00055 (finding similar expenses non-cognizable under Subsection (B) "for the reasons discussed . . . for subsection A").

The three primary activities the Commission considered in this regard were warehousing, distribution, and quality control. The Commission correctly found that Lashify's alleged domestic investments in warehousing and distribution were non-cognizable because "no additional steps occur in the United States to make them saleable," ***not*** because importers typically warehouse and distribute imported goods. Appx00054-00055. And the Commission correctly found that Lashify's alleged domestic investments in quality control were non-cognizable because "the evidence shows Lashify conducts only cursory checks of its products in the United States," ***not*** because importers typically perform quality control on imported goods. Appx00053; Appx00055. In other words, it was the actual ***nature*** of these activities that rendered them non-cognizable under Subsection (B), ***not*** just the fact that they also are typical of a mere importer.

As to the ***extent*** of Lashify's alleged domestic investments, the Commission looked, for example, at the meager $37,992 in capital expenditures Lashify invested in R&D and observed that it is "just [redacted] of Lashify's capitalized expenditures." Appx00058 (emphasis added). This further established that Lashify is a mere importer. It also distinguishes Lashify from the complainant in *Certain*

*Percussive Massage Devices*, Inv. No. 337-TA-1206 ("*Percussive Massage Devices*"), with whom Lashify incorrectly claims to "b[ear] remarkable similarities." Lashify Br. at 48.

In *Percussive Massage Devices*, the Commission found that "the record evidence supports a finding that [complainant] is ***more than a mere importer*** because [complainant] started as a small domestic entity where ***a majority*** of its expenses went towards designing and developing the DI Products in the United States." *Percussive Massage Devices*, Comm'n Op., 2022 WL 59156, at *7 (Jan. 4, 2022) (emphasis added). This stands in stark contrast to the fraction of a percent Lashify claims to have spent developing its own products in the United States.[8] Appx00058.

To the extent Lashify bears remarkable similarities to anyone, it is the complainant in *Schaper*. There, as here, the complainant made "very large expenditures for advertising and promotion" but engaged in "relatively small nonpromotional and non-financing activities in this country." *Schaper*, 717 F.2d at 1373. Indeed, Lashify claims to have invested "over $9,000,000" in domestic sales and marketing, which outstrips its domestic investments in R&D by a factor of nearly 237-to-1 (*i.e.*, $9,000,000 ÷ $37,997 = 236.86). Lashify Br. at 9, 30.

[8] Notably, the complainant in *Percussive Massage Devices* also met its burden of proof, whereas the majority of Lashify's evidence was struck as unreliable.

Telling in this regard is that the Commission's "mere importer" inquiry derives from this Court's decision in *Schaper*. Appx00035 (citing *Schaper*, 717 F.2d at 1373); Appx00044 (citing *Schaper*, 717 F.2d at 1372-73); Appx00059-00061; (same); Appx00065 (citing *Schaper*, 717 F.2d at 1373). Lashify argues that the Commission erred by "bas[ing] it approach" on *Schafer*'s holding that "to constitute an 'industry . . . in the United States,' the patent must be exploited by ***production*** in the United States" because the 1988 amendments to Section 337 eliminated the requirement that complainant must manufacture its products in the United States. Lashify Br. at 45 (quoting *Schaper*, 717 F.2d at 1372) (emphasis added). But that is neither what the Commission did, much less what *Schaper* held.

As set forth above, the Commission considered the nature and extent of the activities in the United States that relate to Lashify's products and determined that Lashify is not elevated from being a run-of-the-mill importer into a domestic industry by performing those activities. The 1988 amendments to Section 337 did not change that inquiry. *See* 19 U.S.C. § 1337(a)(3); *accord Certain Foodservice Equip. & Components Thereof*, Inv. No. 337-TA-1166, Comm'n Op., 2021 WL 5104821, at *3 (Oct. 29, 2021) (explaining why post-1998 Section 337 "does not protect mere importers"); *Certain Elec. Candle Prods. & Components Thereof*, Inv. No. 337-TA-1195, Comm'n Op. at 8 (Sept. 13, 2021) (explaining that "Congress did

not intend to protect mere importers" under the post-1988 version of Section 337).[9] And *Schaper* explicitly recognized that, "in proper cases" (*e.g.*, where the complainant's domestic activities add value to its products), a complainant's domestic industry "may encompass more than the manufacturing of the patented item," such as investments in "servicing of the patented item." *Schaper*, 717 F.2d at 1371, 1373. Thus, Lashify is incorrect on both fronts.

Ultimately, neither the Commission nor the CALJ "categorically exclude[d] sales and marketing expenditures, or any other type of expenditure, based solely on the category of expense" (*i.e.*, simply because they were typical of a mere importer). Appx00055-00056. Rather, both found "a ***lack of evidence*** that such expenses are cognizable in the context of this investigation." *Id.* (emphasis added). That same "lack of evidence" rendered Lashify's claimed expenses unsupported, unreliable, and exaggerated, as discussed in more detail below.

#### 2. Lashify Forfeited Its Ability to Rely on the Labor and Capital Expenses Related to the Vast Majority of Its Relevant R&D.

Even if the categories of domestic expenses upon which Lashify relied were indisputably of the type that could satisfy the economic prong requirement, here

---

[9] Notably, at least one member of the Dissent—Commissioner Schmidtlein—"agrees that the legislative history can be read as indicating it was Congress's intent to allow the Commission's pre-1988 'nature and significance' analysis for investigations brought under section 337(a)(1)(A) to persist." *Certain Bone Cements, Components Thereof & Prods. Containing the Same*, Inv. No. 337-TA-1153, Comm'n Op., 2021 WL 287860, at *5 n.9 (Jan. 25, 2021).

Lashify suffered from an across-the-board failure of proof as to the quantification—or even existence—of those expenses. As Ms. Lotti acknowledged, the vast majority of the R&D used to bring the Covered Products to market took place before 2017. Appx47950-47951; Appx48040; Appx48048; Appx48052. And most evidence of Lashify's pre-2017 "start-up" or "sweat equity" activities was struck from the record, and Lashify has abandoned any challenge to the order striking it. Appx00049; Appx19058-19066; Appx27867. Thus, Lashify's repeated claims about being "home-grown innovators" and a ground-breaking "start-up" are irrelevant because they are not based on record evidence and cannot be quantified. Lashify Br. at 2, 31, 37, 48, 50; *see also Lelo*, 786 F.3d at 885 (finding failure to satisfy the economic prong of the domestic industry requirement based on "an absence of evidence").

Lashify's uncorroborated testimony about Ms. Lotti's sweat equity "investments" was well within the Commission's (and the CALJ's) discretion to reject, as it has done in the past. Appx27867; 5 U.S.C. §§ 556(d), 557(b); *see also* Appx00049 ("In accordance with Order No. 55, most of Lashify's evidence based on pre-2017 'start-up' or 'sweat equity' activities is untimely and will not be considered."); *cf. Certain Stringed Musical Instruments & Components Thereof*, Inv. No. 337-TA-586, Comm'n Op. at 26 (May 16, 2008) (refusing to consider domestic "sweat equity" investments because "documentation thereof . . . lacked sufficient

detail.”).

### 3. Lashify’s Alleged Investments in Labor and Capital Are Unsupported, Unreliable, and Exaggerated.

Lashify’s remaining domestic investments in R&D, which the Commission did consider (*i.e.*, Lashify’s post-2017 investments), were “unsupported by the record,” “unreliable,” and “not substantial.” Appx00059. Indeed, “Lashify failed to provide evidence or reliable expert opinion to support its analysis for the majority of the alleged labor and capital expenditures.” Appx00056. The Commission was well within its discretion to give those investment little weight.

#### a) Lashify’s Minimal Post-2017 Investments in Labor and Capital Related to Domestic R&D Are Dwarfed by Lashify’s Foreign Investments.

Lashify exaggerated its alleged domestic investments in R&D, which were a tiny fraction in comparison to Lashify’s overall expenses, in terms of both the money and the effort Lashify expended. Appx00058; Appx00270; Appx28779.

*Quantitatively*, it is not surprising that the Commission saw through Lashify’s exaggerated claim that 100% of its R&D occurred in the United States. Appx00051 (quoting Appx29668 and citing Appx30126). Moreover, as the Commission correctly found, “[i]t is not possible to determine the extent to which Lashify exaggerates the domestic investments compared to foreign investments because, in addition to Lashify’s decision to not provide discovery regarding its manufacturing, Lashify also chose not to provide evidence of its foreign investments.” Appx00051.

Although Lashify failed to adduce any evidence of its foreign investments in labor and capital related to R&D, there was evidence of Lashify's foreign investments in tooling. That evidence shows investments of approximately $105,100 in foreign tooling costs. Appx00051; Appx28788; Appx72313. That same evidence shows Lashify spent only about $7,730 on tooling in the United States. *Id.* Thus, the only available evidence of foreign investments shows that Lashify exceeded its U.S. expenditures with foreign expenditures by a ratio of more than 13-to-1 (***i.e.***, $105,100 ÷ $7,730 = 13.6).

*Qualitatively*, the R&D efforts made by Lashify were almost exclusively directed overseas. Rather than trying to tool up or create manufacturing facilities in the United States, Lashify looked to maximize its profits by relying on "turn-key" contract manufacturers abroad. Appx68430. Lashify's decision to rely on foreign contract manufacturers means that "the alleged 'materials testing and development of manufacturing processes' . . . ***necessarily*** occurred at the foreign manufacturers," as the Commission correctly observed. Appx00051 (emphasis added) (quoting Appx28906; citing Appx66397-66400; Appx66015-66123). Indeed, despite Ms. Lotti's characterization of Lashify's manufacturers as "very low technology factories" that one "should not characterize [as] innovation think tanks," she left it almost entirely to them to figure out how to mass manufacture the Covered Products. Appx66508-66509.

NON-CONFIDENTIAL

For example, all that was explained to Manufacturer II was "the desired technique [of applying] and appearance of the [lash extensions]," after which Manufacturer II was expected to "trial" different manufacturing techniques "to provide the best solution to this build." Appx67188. Specifically, it was left to Manufacturer II to determine the best way "to achieve the desired look and attributes communicated by the Lashify team" (*id.*), which Manufacturer II did on its own using an [redacted] to form the lash extensions (Appx66397). In fact, when asked about this manufacturing step at deposition, Ms. Lotti testified that she had never even seen an [redacted], "ever," and that she "d[idn]'t care" how the product was made, as long as "it looks really good":

> I don't think that in person I've ever seen an [redacted] ***ever***.
>
> ***
>
> ***I don't care how you do it***. Use a welder. Use an oven. Use a, you know, gun. Use the iron. ***Just get it and make sure that it looks really good***.

Appx66397 (emphasis added). In other words, Ms. Lotti is more concerned with how Lashify's products look than how they are made.

Similarly, Ms. Lotti gave just over an hour-and-a-half (or, in Ms. Lotti's words, "two seconds") of her time text messaging Manufacturer I instructions about how she wanted her lash extensions to look. Appx55280-55301; Appx56537. Beyond providing Manufacturer I with images of exemplary lash extensions and

requesting that they be made of "PBT" and "melted together using heat," Ms. Lotti provided very little guidance on how to manufacture them. Appx55285. For example, she never mentioned the time, temperature, or type of glue required to connect the fibers of the lash extension (Appx55280-55388)—details the Commission and CALJ found central to determining whether the '984 Patent's "heat fused" limitation was met (Appx00022-00023; Appx0206). Manufacturer I had to figure all of these critical details out for itself, including the appropriate equipment to use. *See, e.g.*, Appx67190 (Manufacturer II stating that it "will provide a list of all tools that will need to be created to accomplish this task and will confirm all tooling costs as these are available").

Lashify leaned heavily on its foreign manufacturers to develop various other parts of its "DIY lash extension system" too, including the applicator and storage cartridge that practice U.S. Design Patent Nos. D877,416 ("D'416 Patent") and D867,664 ("D'644 Patent"). For example, Lashify's purported "CAD drawings, three-dimensional renderings, and 3D printed models" (Lashify Br. at 7-8) for its applicator appear to have been nothing more than a "3D file . . . which is ***strictly for silhouette/shape only***" and a ***non-functional***, "handmade prototype" (Appx47796; Appx67053 (emphasis added); *see also* Appx43868-43871). To actually "convey what we are looking for," Lashify also had to provide its manufacturer with physical samples of ***functional***, third-party applicators "that have the edges/radius, thinness

of lash grab zone, weight and alloy (metal) that we like." Appx67053. Lashify then relied on its manufacturers to make ***functional*** drawings and prototypes of its applicator and storage cartridge.

Lashify had to defer to its foreign manufacturers to make functional CAD drawings because its own "CAD designer" was, in Ms. Lotti's words, "not really good at the ***engineering CAD***."[10] Appx65582 (emphasis added). That is why the final drawings of Lashify's applicator and storage cartridge are shown as being created by an employee of Manufacturer II. Appx44565; Appx67187. Lashify's President had never even heard of this individual when questioned about the individual at deposition. Appx12450. Thus, the record evidence demonstrates that Lashify's minimal post-2017 investments in labor and capital related to domestic R&D are dwarfed by its foreign investments.

**b) Lashify's Alleged Post-2017 Investments in Labor Are Contradicted by the Record and Unreliable.**

The deficiencies in Lashify's R&D investments can be seen not only from the type of expenses that Lashify included, but also from its allocation methodology. Lashify, through Ms. Lotti's testimony, allocated 100% of Employee I's,

[10] Lashify also can be seen asking Manufacturer II to "send drawings of the double end skinny mascara component to Lashify" (Appx67189), "suggest 'safe' levels of ingredient added [to the glue] so as not to affect performance of the glue" (*id.*), "advise" Lashify on what material—silicone, PTFE, or Teflon—could be used to "coat" the applicator (*id.*), and "create CAD drawings . . . of the finalized kit" (Appx67190).

Employee II's, and Employee III's salaries to R&D related to the Asserted Patents. Appx00273-00274 (citing Appx48815-48816). But Ms. Lotti did not provide any support for her estimates. Appx00274. She did not testify that she even spoke to any of her employees to confirm the amount of time they spent on R&D, nor did Lashify cite to any testimony from the witnesses themselves. *Id.* Instead, the record evidence, including Ms. Lotti's own testimony, contradicts Ms. Lotti's estimates. *Id.*

For example, Ms. Lotti testified that Employee I "was hired to help Lashify source U.S. manufacturers," despite also claiming that Employee I spends 100% of her time on R&D. Appx00274 (citing Appx48036-48037). Ms. Lotti also contradicted herself with respect to Employee II, whom Ms. Lotti explained "designed the [Lashify] logo"—a purely marketing activity. Appx48037. Lashify's President and Lashify's economic expert also confirmed through their testimony that Employee II was responsible for non-qualifying, marketing-type "design" work. Appx12497 ("[Employee II] . . . was in charge of the package design."); Appx48783 ("[Employee II] . . . was in charge of package design . . . . [Employee II] helped . . . design . . . the artwork that's on the package for the individual lashes.").

Lashify's reliance on 100% of Employee II's salary is particularly troubling for the '984 Patent, as it was confirmed that Employee II did ***not*** perform any design work on the lash extensions allegedly covered by that patent. Appx12499 ("On the

gossamer lashes specifically, [Employee II] does not, to my knowledge, work on the design of those.”). The same is true of Lashify’s reliance on 100% of Employee III’s salary.[11] “She was a CAD designer,” Appx66582, but Lashify did not use CAD drawings when designing its lash extensions, Appx12494 (“[F]or lashes, we rely on Ms. Lotti’s sketches and direction.”). Thus, none (*i.e.*, 0%) of Employee II or III’s salaries should be attributed to R&D for the ’984 Patent, because neither of them worked on R&D for Lashify’s lash extensions. This is troubling because Employee II and III’s salaries account for more than a third of the salaries Lashify attributes to R&D (*i.e.*, ($dollar amount [redacted] + $dollar amount [redacted]) ÷ $dollar amount [redacted] = 0.36). Appx40061.

For at least these reasons, the Commission correctly declined to consider Lashify’s investments in labor as part of Lashify’s alleged domestic industry under Subsection (B). Appx00055-00056; Appx00274.

#### c) Lashify’s Alleged Post-2017 Investments in Capital Are Over-Inclusive and Unreliable.

Lashify’s allocated capital expenditures suffer from similar issues of over-inclusiveness and unreliability. Since its initial complaint, Lashify has attempted to claim expenses, such as “meals,” “entertainment,” and “travel” as part of its alleged domestic investments in capital related to the Asserted Patents. Appx19123.

The disproportionate significance of these questionable expenses was made

[11] Tellingly, Lashify’s President had never even heard of Employee III when questioned about her at deposition. Appx12445.

apparent by Lashify's own economic expert, who relied on them in the same manner as Lashify's other investments in capital—namely, Lashify's paltry capital investments in R&D. Lashify purports to have spent $334,168 on meals, $12,511 on entertainment, and $509,777 on travel[12] from 2017 through the filing of the complaint, while spending only $37,992 on R&D during that same time period. Appx13412-13413; *see also* Appx40048-40049. Lashify's domestic capital expense for ***meals***, upon which Lashify continues to rely, was nearly ***nine times*** greater than its domestic capital investments in R&D in the same period (*i.e.*, $334,168 (meals) ÷ $37,997 (R&D) = 8.79). *See infra* V.B.3.c).

In total, Lashify's expenditures on R&D accounted for just [redacted] ***percent*** of Lashify's capital expenses between 2017 and the filing of its complaint (*i.e.*, $37,992 ÷ $[redacted] = [redacted]). Appx00058; Appx00270; Appx28779; Appx40049. Lashify's inflated alleged domestic investments in capital are not probative under Subsection (B) for this separate, additional reason.

**4. Lashify Failed to Show that Its Other Domestic Activities Add Any Value to the Covered Products.**

In addition to comparing a complainant's foreign and domestic investments, and a complainant's cognizable domestic industry investments versus other

---

[12] Lashify ultimately excluded entertainment and travel from the investments in capital it attempted to rely on as part of its alleged domestic industry. Appx40048; Appx48810-48811.

domestic expenses, the Commission was correct to look at the value added to the article in the United States by domestic activities when determining whether a complainant's investments are sufficient to constitute a domestic industry. *Schaper*, 717 F.2d at 1373 ("There is simply not enough significant value added domestically to the [domestic industry articles] by Schaper's activities in this country (including design, inspection and packaging)."); ***accord***, ***e.g.***, *Certain Cube Puzzles*, Inv. No. 337-TA-112, Comm'n Op., 1982 WL 974906, at 13 (Dec. 30, 1982) (finding existence of a domestic operations where "approximately 50 percent of the value of the cube puzzle" was added in the United States by "quality control, packaging and repair operations"); *Certain Male Prophylactic Devices*, Inv. No. 337-TA-546, Comm'n Op., 2007 WL 9772268, at *25 (Aug. 1, 2007) (finding domestic industry where "lubricating, foiling and testing the condoms" added 34% value).

Here, the Commission determined that "'[t]here are no additional steps to make [the Lashify] products saleable' in the United States." Appx00060 (alterations in original) (quoting Appx00264). For example, "when the eyelash products are sold as part of a kit, including the Lashify Control Kit, Lashify's U.S. activities include merely adding a Fuse Control Wand to the kit, as delivered from overseas, before putting the kit in a box for shipping to U.S. customers." Appx00060-00061. As a consequence, Lashify failed to adduce any evidence that its domestic activities add ***any*** value to the Covered Products.

### a) Lashify Failed to Show that Any Value Is Added to Its Lash Extensions ('984 Patent) in the United States.

It is undisputed that Lashify's lash extensions arrive in the United States individually packaged either in a sealed plastic pouch or as part of a kit with the Gossamer lashes already placed inside. Appx48783; Appx55641; Appx55669; Appx72267-72268. In both instances, the lash extensions already are secured in their storage cartridges in the manner in which they will be used by consumers:




Appx55641; Appx55669; Appx72268. No additional steps are required to make the lash extensions saleable. In fact, even the boxes and tissue that are subsequently used to pack and ship these products are purchased overseas. Appx67247 at Rows 223-227.

Thus, the record evidence shows that absolutely zero value is added to Lashify's lash extensions in the United States. In fact, the Commission determined that Lashify does not even practice the '984 Patent (and thus failed to satisfy the technical prong of domestic industry as well). Appx00015. This confirms that

Lashify failed to show it is more than a mere importer as to the ’984 Patent.

**b) Lashify Failed to Show that Any Value Is Added to Its Storage Cartridge (D’416) in the United States.**

As an initial matter, “Lashify failed to ‘explicitly state whether the storage cartridge is manufactured outside of the United States,’” which eliminates one possible source of added value in the United States.[13] Appx00043 (footnote omitted) (quoting Appx00264 n.68). The Commission correctly found that this omission made Lashify’s allocation of investments to the D’416 Patent “unreliable” because it made it impossible to determine what, if any, warehousing costs should be attributed to the D’416 Patent. Appx00054 (citing Appx00264 & n.68).

Furthermore, Lashify does nothing to its storage cartridges after they enter the United States, other than pack and ship them to consumers. Appx55641; Appx55669; Appx72268. As their name implies, these cartridges “store” Lashify’s lash extensions from when they leave the manufacturer until the consumer removes them at the point of use:

[13] It appears to be manufactured abroad because, as set forth above, Lashify’s lash extensions already are installed in storage cartridges when they are imported into the United States. Appx55641; Appx55669; Appx72268.




*Id.* ("storage cartridge" annotations added). Thus, like Lashify's lash extensions, Lashify's storage cartridges are imported in the exact state in which they will be used by consumers. *Id.* No additional steps are required to make the storage cartridges saleable. This confirms that Lashify also failed to show it is more than a mere importer as to the D'416 Patent.

#### c) Lashify Failed to Show that Any Value Is Added to Its Applicator (D'644) in the United States.

The only domestic activity identified by Lashify that could possibly add value to any of the Covered Products are the purported "finishing" steps performed on Lashify's applicator. *See* Lashify Br. at 52. But once more, Lashify failed to adduce sufficient evidence of its alleged investments in this process. Specifically, "Lashify did not identify the actual costs related to the finishing steps." Appx00054 (citing Appx00264 & n.67). "[S]o there is ***also*** a lack of evidence as to the D'644 patent." *Id.* (emphasis added). This confirms that Lashify also failed to show it is more than

a mere importer as to the D'644 Patent.

In sum, Lashify failed to carry its burden of showing "significant employment of labor and capital" in the United States under Subsection (B). 19 U.S.C. § 1337(a)(3)(B). Lashify failed to obtain discovery from its own manufacturers and, instead, relied almost exclusively on the uncorroborated and often contradicted testimony of its CEO, Ms. Lotti. But large swaths of that testimony was struck as untimely and prejudicial. The result is that Lashify's alleged domestic investments in labor and capital are unsupported, unreliable, exaggerated, or some combination thereof, making "a determination as to whether a domestic industry exists is ***impossible***." Appx00063 (emphasis added). By contrast, what little evidence of investments (foreign and domestic) that did make it into the record established that Lashify is nothing more than an importer who does not qualify for Section 337's protections.

### C. The Commission Correctly Construed "Heat Fused" as Requiring Fibers Merged into a "Single Entity."

#### 1. Lashify Does Not Challenge the Commission's Findings that It Cannot Meet the Technical Prong of Domestic Industry Even Under its Own Construction.

Lashify's challenge to the Commission's construction should be rejected on the merits, as discussed below. However, even under Lashify's improper construction, the Commission's unchallenged findings establish that Lashify cannot satisfy the technical prong. Lashify only attempted to meet its technical prong

burden with respect to independent claims 1, 23, and 28 of the ’984 Patent. Appx00199; Appx28870. Even under Lashify’s broad construction, those claims would still require, at a minimum, that the artificial hairs be joined using heat. Appx00351-00352, cls. 1, 23, 28. However, the Commission made contrary factual findings (unchallenged on appeal) as to both of Lashify’s manufacturing processes.

Lashify only relied for the technical prong on manufacturing processes employed by its two foreign manufactures. As to Manufacturer I, the Commission reviewed the evidence and found that “Respondents’ evidence confirms that the [Manufacturer I] products were joined with glue, not heat.” Appx00022. As to Manufacturer II, the Commission reviewed cross-sectional images of the resulting products and concluded that there was no “heat fused” connection between the fibers and instead those fibers were “pushed into and held in place by the base.” Appx00026. “When the locations of the cross-section cuts are compared to Dr. Iezzi’s images, it is clear that the images that allegedly appear to show ‘merging’ are actually cut through the solid PET base.” Appx00028-00029. “It appears that the lash fibers are stuck into the separate PET base, but there is no evidence that there is a ‘heat fused’ connection between the fibers.” Appx00029. “As the cross-sections move up from the base, the images show individual separate fibers with well-defined boundaries.” *Id.*

Lashify has raised only two issues on appeal: the Commission’s weighing of

certain economic prong evidence and its construction of heat fused. Lashify Br. at 5-6. Having failed to challenge the Commission's factual findings regarding technical prong in its principal brief, Lashify cannot challenge them for the first time in its Reply. *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived."). Prevailing on the technical prong of domestic industry is a requirement for the relief Lashify seeks from the Commission and, as a result of the Commission's findings, Lashify has failed to establish that the claim-construction error it asserts is prejudicial. *See Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003) (holding that appellant must show that the claim construction error it asserts is prejudicial).

### 2. Lashify Continues Its Quest for a Construction that Abandons the Plain Meaning of "Fused" Contrary to the Intrinsic Evidence.

In any event, the Commission's claim construction was correct. The '984 Patent claims require the recited hairs not just be connected, but instead have a "heat fused" connection. Appx00351 at 9:6-27 ("a first heat fused connection"). Lashify seeks to eliminate that important distinction through its proposed claim construction. This Court has recognized the broad concept of merely connecting, which makes the additional requirement of "heat fused" even more important to the '984 Patent

claims. *See Douglas Dynamics, LLC v. Buyers Prod. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) ("The ordinary meaning of 'connected to' encompasses indirect linkages."). The Commission properly took into account the use of "heat fused" as further limiting "connection." *See Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1381 (Fed. Cir. 2022) ("[T]he district court was correct in seeking to give meaning to the term 'fastening stem' by looking to the meaning of the words 'fastening' and 'stem' as used in the patent.").

While Lashify has stated its construction as "joined using heat," its brief makes clear that it reads "joined" as a proxy for the broad concept of mere connection. *See* Lashify Br. at 54 ("the process of 'connecting,' *i.e.*, joining, artificial hairs"). In doing so, Lashify would improperly render "fused" as mere surplusage given Claim 1's use of the term as a further limit on a "connection." As this Court knows well, "[i]t is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous." *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017). Lashify makes no attempt to rebut the presumption that "heat fused" should be read the same across all the claims, and the claim language by itself shows that Lashify's claim construction arguments are incorrect.

The specification also supports the Commission's construction. A mere "connection" between hairs, for example using a glue or adhesive, is specifically

distinguished from "fused" hairs. "The intersecting portions of the crisscrossing artificial hairs could also be ***connected using an adhesive*** (i.e., ***rather than being fused*** together via a hot melt process)." Appx00348 at 4:46-48 (emphases added). Such distinctions made in the specification should not be erased through claim construction as Lashify attempts to do here. *See Apple Inc. v. Corephotonics, Ltd.*, 81 F.4th 1353, 1359 (Fed. Cir. 2023) (rejecting construction inconsistent with the inventor's claim language choice where "the inventor took pains in the specification to describe different types of point of view—Wide position, Wide perspective, Tele position, and Tele perspective—but intentionally chose to claim only '***a*** point of view of the Wide camera'").

The intrinsic evidence maintains that distinction in the claims as well. Dependent Claims 26 and 29 recite that sets of artificial hairs can intersect "at a point of ***fusion or adhesion***." Appx00351-00352 at 10:65-67, 11:12-17 (emphasis added). The distinctions made in the claims also support the Commission's refusal to expand the claim scope. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (reversing lower court's ruling that a "pusher assembly" and a "pusher bar" have the same meaning). The intrinsic evidence consistently reveals that the inventor knew of and indicated the difference between fused hairs and those connected using an adhesive. A person of ordinary skill in the art would understand from that evidence that "adhesion" of fibers is different from

"fusion" of fibers, and the extrinsic evidence supported knowledge of that distinction as well. Appx07710, ¶¶ 55-56.

Rather than confront the specification evidence contrary to its construction, Lashify repeatedly makes an irrelevant reference to one specification excerpt regarding specific temperatures (55-110°C) of a manufacturing process. Lashify Br. at 11, 56. That language, which does not apply to every possible variety of material for making artificial lashes, is contradicted both by the temperatures identified in the incorporated provisional application (200-250°C) and the expert testimony for the materials actually used in the parties' products. *See* Appx07689-07690, ¶32; Appx00168; Appx62105 (citing Appx70564). In any case, Lashify has no basis for challenging the Commission's ordinary meaning construction requiring a single entity based on the possibility of that state occurring at different temperatures for different materials. The temperature at which a given material fuses is a factual issue and if the specification is correct that there are materials that could become a single entity at 55-110°C, that is perfectly consistent with the Commission's proper construction. The Commission's construction does not set a temperature range, so it does not necessarily include or exclude any particular temperature range. Critically, Lashify does not raise as an issue the Commission's non-infringement finding under the construction requiring a single entity. Lashify Br. at 5-6.

Lashify also relied on "heat fused" at the Patent Office as further limiting a

mere connection. During prosecution of the parent application, the examiner rejected the originally presented claims (directed to forming fusions "via exposure to a heat source") in light of prior art U.S. Patent No. 3,454,015 ("Udes"). The Udes patent discloses heating artificial lashes, not to fuse them, but to impart a curl to them. Appx07920 at 2:3-6, 2:65-72; Appx52471-52472 ('388 Office Action dated Sept. 16, 2019). Or, in the words of Lashify's counsel at the *Markman* hearing in the underlying investigation:

> What Udes talks about is you weave lashes into a particular structure, and then you curl them. And ***curling is not heat fusion***.

Appx08596 (emphasis added); ***see also id.*** ("The process of Udes that was used for curling lashes wasn't melting fibers."); Appx08597 ("[C]urling is not heat fusing. Heat fusion has a different sort of -- it's a different methodology.").

To overcome the Udes reference, the Applicant relied on the newly introduced limitation of "heat fusing" in an examiner interview to argue patentability. Appx52639. The '388 claims as amended ultimately issued with the "heat fused" limitation now disputed. The '984 claims, as a continuation of the '388 Patent, contained that same "heat fused" limitation and all parties agreed that this term should be construed to mean the same in both patents. Appx00307-00308. The prosecution further illustrates how Lashify's attempt to render "fused" a meaningless addition is improper. "[T]he prosecution history may be given substantial weight in

construing a term where that term was added by amendment." *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1369-70 (Fed. Cir. 2008).

### 3. The Commission Properly Looked to a Dictionary Definition Cited by the Parties in Explaining How a Connection Is Fused When It Forms a Single Entity.

Given the clear intrinsic evidence above, the Commission properly looked to how the ordinary meaning of "fused" limited the broad concept of connection in reaching its construction. As the Commission noted, "[a]ccording to dictionaries cited by the parties, 'fuse' means to join 'to form a single entity.'" Appx00313. Specifically, the dictionary cited by both parties is the Concise Oxford English Dictionary which defines "fuse" as "1. join, blend, or coalesce ***to form a single entity***; 2, melt (a material or object) with intense heat, so as to join it with something else." Appx08046 (emphasis added). Lashify specifically cited that definition of "fuse" with the phrase "form a single entity." Appx08403 ("The first definition of 'fuse' here too supports Lashify's plain and ordinary meaning…."). Lashify criticizes the Commission's use of "form a single entity," but its explanation for citing the relevant definition, Lashify Br. at 57 n.21, conflicts with the position it took that the definition "supports Lashify's plain and ordinary meaning." *Compare* Appx08403, *with* Lashify Br. at 57 n.21 ("Lashify pointed out that Respondents' dictionary undermined their proposed 'melting' requirement."). "Courts may rely on dictionary definitions when construing claim terms, so long as the dictionary

definition does not contradict any definition found in or ascertained by a reading of the patent documents." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013). The Commission's use of an agreed dictionary definition to explain in its construction how "fused" further limited the claimed connection was correct.

While Lashify makes arguments that the "single entity" language for fused is incorrect, contrary to the definition it previously cited, none of those arguments undermine the Commission's construction. Lashify spends the majority of its argument identifying numerous specification quotations in which there is a "connection" formed between the hairs. Lashify Br. at 54-57. However, the Commission's construction is perfectly consistent with their being a connection. The question, instead, is what a "heat fused connection" entails beyond a mere connection. None of Lashify's quotations specifically address the question the Commission answered.

Lashify also asserts that the Commission's construction is flawed because the claim language includes "multiple component fibers" and does not "require that the artificial hairs become a single entity." Lashify Br. at 55-56. That conclusory assertion avoids the question. The proper construction of "fused," based on the definition Lashify cited, requires that a single entity be formed, so the claim language does have that requirement. Of course, if the claim separately stated that

requirement, it would be surplusage given the use of "fused," so the fact that it does not is unsurprising and certainly does not support Lashify's position.

Finally, Lashify argues that the Commission's construction "conflicts" with its factual findings. Lashify Br. at 57. Lashify's arguments here are based on unsupported attorney argument that "melting" is required for a connection to form a single entity or to be unable to be easily separated, despite the Commission's claim construction not mentioning melting. The Commission's factual findings understandably focus on the specific PBT materials actually used in the parties' products and the fact that those particular materials do not form a single entity at the manufacturing temperature of around 120 degrees (***i.e.***, over 100 degrees below their melting temperature). Appx00030; Appx07789-07791. Lashify's assertion that the claims might apply to different materials manufactured at lower temperatures is irrelevant to the Commission's application of the claims to the specific materials actually used in the parties' products.

Lashify also strays from its claim construction argument to address an application of that construction: that a single entity is not easily separated. Application of a claim construction is a question of fact and Lashify has not shown that it was unreasonable for the Commission to consider whether hairs could be easily separated in assessing if they had formed a single entity. "The second step of the infringement analysis involves a comparison of the accused product to the

construed claims, which is an issue of fact that we review for substantial evidence." *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1327-28 (Fed. Cir. 2021); *see also Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1361 (Fed. Cir. 2016) ("Whether the hashed password in Apple's X-token contains the same 'user information' as in a user's password is a fact question properly left to the jury.").

Lashify spends almost none of its argument on the distinction between the Commission's requirement of "applying heat" and the "using heat" component of its own construction. Given that Lashify agreed to "applying heat" during the claim-construction hearing, Lashify has waived any such challenge:

> So I think we have proposed a compromise in our responsive brief. We're fine with "joined together by applying heat" so the artificial hairs and clusters connect.

Appx08600 at 33:4-7 (emphasis added); *see also* Appx08641 at 74:9-14; Appx08718 n.1. The Commission certainly committed no error in adopting the parties' proposal of "applying heat" as part of its construction. *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1129 (Fed. Cir. 2021).

Lashify makes a slew of complains about the Commission's treatment of "a process." Lashify Br. at 13-14 & n.2, 27, 60. However, once again, Lashify did not raise the Commission's application of its construction as an issue on appeal, Lashify Br. at 5-6, and this Court should presume that the Commission correctly applied its construction in finding as a fact that a process does not

apply heat and thus is not, by itself, capable of heat fusion. Appx00020-00023. An appeal is decided on the assumption that unappealed aspects of the lower court decision were accurate. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428-29 (2003) ("Because respondents did not appeal the District Court's adverse judgment on counts 1, 2, and 4 of their complaint, we decide the case on the assumption that the Moseleys' use of the name 'Victor's Little Secret' neither confused any consumers or potential consumers, nor was likely to do so.").

### D. Lashify Cannot Establish a Violation of Section 337 Even if It Prevails on Both of the Issues Raised Here.

Among Lashify's many evidentiary shortcomings was its failure to establish representativeness across its many eyelash products. Its expert "performed full testing on only three of the sixteen domestic industry products" (Appx00018) and then, "stated, without explanation or support," that those three products were representative of the thirteen others (Appx00017). Furthermore, "the evidentiary record regarding Lashify's manufacturing processes is limited because Lashify failed to provide evidence of the manufacturing processes used by its two manufacturers." Appx00019.

Although the CALJ and the Commission ultimately declined to rule on representativeness because the issue was mooted by their finding that the three products analyzed did ***not*** practice the Asserted Patents (Appx00020; Appx00199 n.33), the dearth of evidence of representativeness adduced during the underlying

investigation will prevent Lashify from establishing representativeness even if it prevails on both issues raised here. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1367 (Fed. Cir. 2004) ("Having shown error, Sulzer must also establish that the error was prejudicial. Prejudicial error exists if the outcome of the case would have been different . . . ."). And without establishing representativeness across all sixteen of its lash products, Lashify cannot properly allocate its domestic investments to the Asserted Patents, as required. *See* 19 C.F.R. §1337(a)(3) (requiring that qualifying investments be "with respect to the articles protected by the patent"); *accord, e.g.*, *Certain Television Sets, Television Receivers, Television Tuners, & Components Thereof*, Inv. No. 337-TA-910, Comm'n Op. at 58 (Oct. 30, 2015). And neither this Court nor the Commission should be required to perform this waived allocation on Lashify's behalf. Appx00063 ("[T]he Commission can think of no persuasive reason why the fact finder must sift through the record evidence to construct an allocation that meets the complainant's burden after finding complainant's presentation of evidence severely flawed."); *Sulzer Textil*, 358 F.3d at 1365 (rejecting "speculative and conclusory argument" as insufficient). Thus, Lashify could not satisfy the economic prong of the domestic industry requirement even if none of its domestic investments were excluded from consideration ***and*** it received the claim construction it seeks here.

## VI. CONCLUSION

For these reasons, the Court should affirm the Commission's denial of the exclusion order sought by Lashify.

November 21, 2023

/s/ Michael Hawes

Michael Hawes
Lori Ding
**Baker Botts L.L.P.**
910 Louisiana Street
Houston, TX 77002
Phone: (713) 229-1234
michael.hawes@bakerbotts.com
lori.ding@bakerbotts.com

Lisa M. Kattan
Thomas C. Martin
**Baker Botts L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
Phone: (202) 639-7700
lisa.kattan@bakerbotts.com
tommy.martin@bakerbotts.com

Theodore W. Chandler
**Baker Botts L.L.P.**
1801 Century Park East
Suite 2400
Los Angeles, CA 90067
Phone: (213) 202-5702
ted.chandler@bakerbotts.com

*Counsel for Kiss Nail Products, Inc.; Ulta Salon, Cosmetics & Fragrance, Inc.; Walmart, Inc.; and CVS Pharmacy, Inc.*

/s/ Mark A. Miller

Mark A. Miller
Elliot Hales
**Dorsey & Whitney LLP**

Hui Shen
**Dorsey & Whitney LLP**
1401 New York Avenue NW

111 S Main Street, Suite 2100
Salt Lake City, UT 84111
Phone: (801) 933-4068
miller.mark@dorsey.com
hales.elliot@dorsey.com

Washington, DC 20005
Phone: (202) 538-0381
shen.hui@dorsey.com

*Counsel for Qingdao Hollyren Cosmetics Co. Ltd., dba Hollyren, Qingdao Xizi International Trading Co., Ltd., dba Xizi Lashes, and Qingdao Lashbeauty Cosmetic Co., Ltd., dba Worldbeauty*

/s/ Jason R. Bartlett

Jason R. Bartlett
Mauriel Kapouytian Woods LLP
450 Sansome Street, Suite 1005
San Francisco, CA 94111
Phone: (415) 738-6334
jbartlett@mkwllp.com

Rory Jeffrey Radding
Mauriel Kapouytian Woods LLP
15 W 26th Street, Seventh Floor
New York, NY 10010
Phone: (212) 524-6053
rradding@mkwllp.com

*Counsel for Artemis Family Beginnings, Inc., dba Lilac St. and Alicia Zeng*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that on November 21, 2023, an electronic copy of the foregoing Intervenors' Non-Confidential Responsive Brief was filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system and thereby causing a "Notice of Electronic Filing" to be served on all counsel of record.

Date: November 21, 2023 /s/ Michael Hawes

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. Cir. Rule 32(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 10,612 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: November 21, 2023 /s/ Michael Hawes