***No. 23-1245***

# United States Court of Appeals for the Federal Circuit

LASHIFY, INC.,

*Appellant,*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

QINGDAO HOLLYREN COSMETICS CO. LTD., DBA HOLLYREN, QINGDAO XIZI INTERNATIONAL TRADING CO., LTD., DBA XIZI LASHES, QINGDAO LASHBEAUTY COSMETIC CO., LTD., DBA WORLDBEAUTY, KISS NAIL PRODUCTS, INC., ULTA SALON, COSMETICS & FRAGRANCE, INC., WALMART, INC., CVS PHARMACY, INC., ARTEMIS FAMILY BEGINNINGS, INC., DBA LILAC ST., ALICIA ZENG,

*Intervenors*

**Appeal from the United States International Trade Commission Investigation No. 337-TA-1226**

**NONCONFIDENTIAL REPLY BRIEF OF APPELLANT LASHIFY, INC.**

SAINA S. SHAMILOV
sshamilov@fenwick.com
FENWICK & WEST LLP
801 CALIFORNIA STREET
MOUNTAIN VIEW, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

BRYAN A. KOHM
bkohm@fenwick.com
TODD R. GREGORIAN
tgregorian@fenwick.com
FENWICK & WEST LLP
555 CALIFORNIA STREET, 12TH FLOOR
SAN FRANCISCO, CA 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Jonathan Tamimi
jtamimi@fenwick.com
FENWICK & WEST LLP
401 UNION STREET, 5TH FLOOR
SEATTLE, WA 98101
Telephone: (206) 389-4510
Facsimile: (206) 389-4511

*Counsel for Appellant Lashify, Inc.*

February 16, 2024

## CERTIFICATE OF INTEREST

Counsel for Appellant Lashify, Inc. certifies the following pursuant to Federal Circuit Rule 47.4:

1. The full name of every party or amicus represented by me is:

   Lashify, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   As indicated in item 1.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the parties or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not entered an appearance in this case) are:

| Law Firm | Partners and Associates |
|---|---|
| Fenwick & West LLP | J. David Hadden, Donna Long, Shreyas A. Kale, Min Wu, Shannon Turner, Jonathan T. McMichael, Eric Menist, Kathryn M. Hauh, Emily Bullis, Brian Hoffman, Su Li, Fenwick & West LLP |
| Formerly at Fenwick & West LLP | Jae Woo Park, Martyna Skrodzka, Julie Nokleberg, Christopher Glancy, Peiyao Zhang, Patrick Doyle, Eric M. Majchrzak |
| Bartkowski PLLC | Paul M. Bartkowski, Thomas R. Burns |
| Formerly at Adduci, Mastriani & Schaumberg LLP | Michael R. Doman, Jr. |

5. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case.

*Lashify, Inc. v. Kiss Nail Products, Inc.*, D.N.J. Case No. 2:20 cv-10023

*Lashify, Inc. v. Alicia Zeng d/b/a Lilac St.*, N.D. Cal. Case No. 5:20-cv-06086-LHK

*Lashify, Inc. v. Qingdao Lashbeauty Cosmetic Co., Ltd. d/b/a Worldbeauty*, W.D. Tex. Case No. 6:22-cv-00776-ADA
(involves patents from same family as one patent-at-issue)

*Lashify, Inc. v. Qingdao Hollyren Cosmetics Co., Ltd. d/b/a Hollyren*, W.D. Tex. Case No. 6:22-cv-00777-ADA
(involves patents from same family as one patent-at-issue)

*Lashify, Inc. v. Urban Dollz LLC d/b/a Urban Doll*, C.D. Cal. Case No. 2:22-cv-06148-GW-AFM
(involves patents from same family as one patent-at-issue)

*Urban Dollz LLC d/b/a Urban Doll,* C.D. Cal. Case No. 2:23-cv-1427

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).

None/Not applicable.

February 16, 2024

FENWICK & WEST LLP

By: */s/ Saina S. Shamilov*
Saina S. Shamilov
Attorneys for Appellant
*Lashify, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ....................................................................i

CONFIDENTIAL MATERIAL OMITTED ..................................................... viii

TABLE OF ABBREVIATIONS ..................................................................ix

INTRODUCTION ..................................................................................1

I. THE COURT SHOULD REVERSE THE MAJORITY'S DETERMINATION OF NO ECONOMIC DOMESTIC INDUSTRY. .........3

A. The Commission fails to justify the majority's use of a textual tests to exclude Lashify's qualifying labor and capital investments. ..........................................................................3

1. The Commission cannot justify exclusion of qualifying labor and capital expenses based on a purported unexpressed intent of Congress. ................................................4

2. The Commission has treated labor and capital expenditures for sales, marketing, warehousing, and distribution inconsistently under §1337(a)(3)(B). ......................7

3. A plain reading of the statute would not open the floodgates to "mere importers" or complainants with no connection to the United States...............................................10

B. Lashify proved that there is an economic domestic industry in salon-quality DIY lash extensions and peripherals........................11

1. Lashify showed significant domestic investments in labor and capital with respect to the articles protected by the patents. ..........................................................................11

2. Lashify is an innovative U.S. startup and not a mere importer of foreign goods. .......................................................13

C. There are no alternative grounds to affirm the domestic industry ruling. .........................................................................17

II. THE COURT SHOULD REVERSE THE ERRONEOUS CONSTRUCTION OF "HEAT FUSED" AND VACATE THE NONINFRINGEMENT AND TECHNICAL DOMESTIC INDUSTRY RULINGS THAT REST ON IT. ..... 19

A. The correct construction of "heat fused" is "joined using heat." ..... 19

B. The ALJ's construction is incorrect because it includes three limitations that conflict with the specification. ..... 24

1. The "single entity" requirement contradicts the claims and specification. ..... 24

2. The "not easily separated" requirement contradicts the claims and specification. ..... 26

3. The application of heat requirement improperly excluded a process. ..... 27

C. The ALJ's and Commission's technical findings depend on an incorrect claim construction and do not provide alternative grounds for affirmance. ..... 29

CONCLUSION ..... 31

CERTIFICATE OF COMPLIANCE ..... 32

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Local Union 26, UNITE HERE*,
895 F.3d 141 (1st Cir. 2018) ........ 7

*Advanced Fiber Techs. v. J & L Fiber Servs., Inc.*,
674 F.3d 1365 (Fed. Cir. 2012) ........ 25, 26

*Baran v. Med. Device Techs., Inc.*,
616 F.3d 1309 (Fed. Cir. 2010) ........ 22

*Bartels Tr. for Benefit of Cornell Univ. v. United States*,
617 F.3d 1357 (Fed. Cir. 2010) ........ 5

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) ........ 8

*Certain Airtight Cast-Iron Stoves*,
Inv. No. 337-TA-69, USITC Pub. No. 1126 (Jan. 1981), Comm'n Op. (Dec. 31, 1980) ........ 5, 6, 7

*Certain Automated Put Walls & Automated Storage & Retrieval Sys.*,
Inv. No. 337-TA-1293, Comm'n Op. (Aug. 17, 2023) ........ 9

*Certain Elec. Shavers*,
Inv. No. 337-TA-1230, Comm'n Op. (May 3, 2022) ........ 9

*Certain Foodservice Equip.*,
Inv. No. 337-TA-1166, Comm'n Op. (Oct. 29, 2021) ........ 9

*Certain Percussive Massage Devices*,
Inv. No. 337-TA-1206, 2022 WL 59156 (Jan. 4, 2022) ........ *passim*

*Certain Printing & Imaging Devices & Components Thereof*,
Inv. No. 337-TA-690, 2011 WL 1303160 (Feb. 17, 2011) ........ 10, 14, 15

*Certain Toner Supply Containers & Components Thereof (II)*, Inv. No. 337-TA-1260, Comm'n Op. (Aug. 3, 2022) ........ 8

*Certain Vacuum Insulated Flasks*,
Inv. No. 337-TA-1216, Comm'n Op. (Feb. 3, 2022) ........ 9

*Chevron U.S.A., Inc. v. NRDC, Inc.*,
467 U.S. 837 (1984) ........ 7

*Chimie v. PPG Indus., Inc.*,
402 F.3d 1371 (Fed. Cir. 2005) ........ 23

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ........ 5

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Electro Sci. Indus. v. Dynamic Details, Inc.*,
307 F.3d 1343 (Fed. Cir. 2002) ....................31

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) ....................21

*Google LLC v. EcoFactor, Inc.*,
No. 2022-1750, 2024 WL 463231 (Fed. Cir. Feb. 7, 2024) ....................28

*Hyosung TNS Inc. v. Int'l Trade Comm'n*,
926 F.3d 1353 (Fed. Cir. 2019) ....................14

*In re Aspen Aerogels, Inc.*,
835 F. App'x 587 (Fed. Cir. 2020) ....................28

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................20

*InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*,
690 F.3d 1318 (Fed. Cir. 2012) ....................7, 18

*InterDigital Communications, LLC v. International Trade Commission*,
707 F.3d 1295 (Fed. Cir. 2013) ....................3, 4, 8

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
22 F.4th 1369 (Fed. Cir. 2022) ....................21

*Lelo Inc. v. International Trade Commission*,
786 F.3d 879 (Fed. Cir. 2015) ....................*passim*

*Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*,
No. 98-cv-80-SLR, 2005 WL 67083 (D. Del. Jan. 5, 2005) ....................22

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ....................20, 23

*Philip Morris Prods. S.A. v. Int'l Trade Comm'n*,
63 F.4th 1328 (Fed. Cir. 2023) ....................3

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................25

*Schaper Manufacturing Co. v. U.S. International Trade Commission*,
717 F.2d 1368 (Fed. Cir. 1983) ....................6

*Solar Energy Indus. Ass'n v. United States*,
86 F.4th 885 (Fed. Cir. 2023) ....................7

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Spansion, Inc. v. Int'l Trade Comm'n*,
629 F.3d 1331 (Fed. Cir. 2010) ....................18

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
795 F.3d 1255 (11th Cir. 2015) ....................21

**STATUTES**

19 U.S.C. § 1337(a)(3) ....................1, 8

19 U.S.C. § 1337(a)(3)(A) ....................5

19 U.S.C. § 1337(a)(3)(B) ....................*passim*

19 U.S.C. § 1337(a)(3)(C) ....................6

26 U.S.C. § 337 ....................1, 2

**RULES**

Fed. R. App. P. 28.1(b)(1)(A) ....................32

Fed. R. App. P. 32(a)(5) ....................32

Fed. R. App. P. 32(a)(6) ....................32

Fed. R. App. P. 32(b)(2) ....................32

Fed. R. App. P. 32(f) ....................32

**OTHER AUTHORITIES**

Terry L. Clark, *The Future of Patent-Based Investigations Under Section 337 After the Omnibus Trade & Competitiveness Act Of 1988*, 38 Am. U. L. Rev. 1149, 1184-85 (1989) ....................5

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted from brief pages iv, 21, and 27-30 contains confidential and proprietary information about Appellant Lashify's manufacturing processes for its eyelash products and was previously designated by Lashify as confidential business information before the International Trade Commission.

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Lashify | Appellant Lashify, Inc. |
| ’984 patent | U.S. Patent No. 10,721,984 |
| ALJ | Administrative Law Judge |
| Commission | The United States International Trade Commission |
| D’416 patent | U.S. Patent No. D887,416 |
| D’664 patent | U.S. Patent No. D867,664 |
| OB | Lashify’s Opening Brief |
| RB | Respondents-Intervenors’ Brief |
| CB | Commission’s Brief |
| Udes | U.S. Patent No. 3,454,015 |

## INTRODUCTION

The Commission and Respondents provide this Court with no sufficient basis to affirm. *First*, the three-Commissioner majority erred by creating tests not found in §1337(a)(3) to assess quantitative proof of a domestic industry. Congress has specified in the governing statute that a domestic industry exists if there is a "significant employment of labor or capital" "with respect to the articles protected by the patent." The Court has held this language imposes two distinct requirements, a "*quantitative*" and a "*qualitative*" assessment. The former requires the Commission to tabulate the domestic labor and capital investments in the patented technology. The latter looks to the activities as a whole that those expenses represent, in the context of the complainant's connections to the domestic marketplace.

Here, the majority instead performed a line-by-line assessment of individual labor and capital investments and subtracted those that failed to meet additional criteria. The majority refused to credit sales and marketing investments unless Lashify proved "sufficient" or "significant" investments in "other qualifying activities," and it excluded warehousing and distribution investments because "mere importers" incur similar costs. Neither the Commission nor Respondents harmonize these tests with the statute. The Commission argues that it must exclude those investments to effectuate Congress's unexpressed intent in amending Section 337.

This, along with similar expense exclusions in other cases, purportedly justifies the Commission departing from the statute's definition of a domestic industry. It does not. Congress did not require a predicate showing before certain labor and capital expenses are counted. Moreover, the Commission has not expressed a consistent view of the statute—it is sharply divided. In some cases, it has credited the expenses that it excluded here, while in others it has applied its "mere importer" test, often drawing dissenting opinions.

Thus, the Commission falls back to argue that unless it imposes these limitations it cannot stop foreign importers from invoking Section 337. But that is not true, either. The qualitative assessment of the "significance" of the complainant's activities already serves this gatekeeping role. The issue on appeal relates to the quantitative assessment, for which §1337(a)(3)(B) requires only a significant employment of "*labor or capital*" in the United States concerning the patented articles. Lashify met that requirement.

Both the Commission and Respondents pivot to arguing that the Court can affirm on the alternative ground that Lashify failed to prove it is an innovative American startup due to evidentiary exclusions by the ALJ. To be clear: *all* evidence Lashify relied upon is in the record; *none* was excluded, and therefore, as the dissent recognized, Lashify established an economic domestic industry.

*Second*, neither the Commission nor Respondents show that "joined using heat" is an incorrect construction of "heat fused." And neither justify the ALJ's addition of unwarranted requirements that the *application of heat* melt and merge separate fibers into a *single entity* that cannot *easily be separated*. They argue that the construction must clarify that gluing fibers together is not infringement. But fibers connected only by the glue between them have not been "joined using heat," and thus no clarification is needed. And rather than defend the other problematic limitations the ALJ adopted, the Commission and Respondents argue the ALJ never required them. This contradicts the record and highlights the lack of support for the construction appealed here.

## I. THE COURT SHOULD REVERSE THE MAJORITY'S DETERMINATION OF NO ECONOMIC DOMESTIC INDUSTRY.

### A. The Commission fails to justify the majority's use of a textual tests to exclude Lashify's qualifying labor and capital investments.

Under §1337(a)(3)(B), a complainant can prove economic domestic industry by showing a "significant employment of labor or capital" "with respect to the articles protected by the patent" "in the United States." This Court has held this and adjacent provisions unambiguous, *see Lelo Inc. v. International Trade Commission*, 786 F.3d 879, 883 (Fed. Cir. 2015), *InterDigital Communications, LLC v. International Trade Commission*, 707 F.3d 1295, 1300 (Fed. Cir. 2013), and twice rejected attempts to add other limitations onto them. *See Philip Morris Prods. S.A.*

*v. Int'l Trade Comm'n*, 63 F.4th 1328, 1341 (Fed. Cir. 2023); *InterDigital*, 707 F.3d at 1299.

Here, the majority rewrote the statute, imposing rules that: (a) sales and marketing investments are not "labor" or "capital" unless the complainant also has "sufficient" or "significant" investments in "other qualifying activities," Appx00055-00056; and (b) warehousing and distribution investments are not "labor" or "capital" because "mere importers" incur such expenses, Appx00055.

The Commission and Respondents fail to reconcile these bespoke rules with the Court's authorities.[1] The Commission never contends that the "other qualifying activities" test is a correct statement of the law, only that it has applied that test previously. CB43. It asks the Court instead to affirm the result by applying the "mere importer" test, CB39 n.22, or yet another rule that sales and marketing expenses would never qualify as "labor" or "capital." CB32 n.19. But it provides no valid reason for the Court to do so.

**1. The Commission cannot justify exclusion of qualifying labor and capital expenses based on a purported unexpressed intent of Congress.**

The Commission argues that Congress's 1988 amendments blessed a pre-existing practice of using the "mere importer" test to exclude certain expenses from

[1] The Commission mentions *Lelo* and *InterDigital* only to observe that they did not enumerate the activities that count as "labor" or "capital." CB34-35.

the domestic industry analysis. CB30-32. Thus, the Court would be justified to imply that exclusion in the statute.

But that is incorrect both legally and factually. It is incorrect legally because the Court applies statutes as written; it does not attempt to discern whether the legislature had some purpose that is not reflected in the language. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (courts "must presume that [Congress] says in a statute what it means"). And even if some such unexpressed purpose is evident, the Court does not prioritize that over the actual text. *See Bartels Tr. for Benefit of Cornell Univ. v. United States*, 617 F.3d 1357, 1361 (Fed. Cir. 2010) (this Court has "never held that legislative history trumps clear text"). Here, nothing in §1337(a)(3)(B) excludes sales, marketing, warehousing, or distribution from the tally of "labor or capital" expenditures concerning "the articles protected by the patent."

The Commission's argument is incorrect factually because Congress did not bless these exclusions. In subsections (A) and (B), Congress codified the domestic industry test from *Certain Airtight Cast-Iron Stoves*, Inv. No. 337-TA-69, USITC Pub. No. 1126 (Jan. 1981), Comm'n Op. (Dec. 31, 1980) ("*Stoves*"). OB46; CB26-27; Terry L. Clark, *The Future of Patent-Based Investigations Under Section 337 After the Omnibus Trade & Competitiveness Act Of 1988*, 38 Am. U. L. Rev. 1149, 1184–85 (1989) ("The first two factors in the new [domestic industry] definition are

derived from the *Stoves* decision"). That test credited "any systematic activity which significantly employs use of American land, labor, and capital for the creation of value," *Stoves* at 10, and did not limit what labor and capital investments would count. And it did not exclude activities of "mere importers," because *Stoves* ruled its domestic industry test satisfied by an "importer-distributor-dealer network." *Id.* at 11.[2]

Further, Congress intended also to *reject* the Commission's past practice and *broaden* the domestic industry test, by eliminating the domestic manufacturing requirement from *Schaper Manufacturing Co. v. U.S. International Trade Commission*, 717 F.2d 1368 (Fed. Cir. 1983). OB45-46. Nonetheless, the Commission argues that *Schaper*'s observation that "very large expenditures for advertising and promotion cannot be considered part of the production process [*i.e.*, manufacturing]," should still somehow control and limit the statute. *Schaper*, 717 F.2d at 1373; *see* CB29.

The Commission's evidence of Congress's purported intent to exclude sales/marketing and warehousing/distribution expenses does not even concern *subsection (B)*, the provision at issue, but rather *subsection (C)*. CB30-31. The

[2] Although the complainant's domestic activity was "more than simply selling [] stoves," *Stoves* at 10, that does not, as the Commission contends, CB26-27, support excluding sales or marketing expenses because *Stoves* did not exclude but credited them. *Stoves* at 10-11.

Commission argues that because Congress rejected a proposal to enumerate sales and marketing expenses in (C), the Court should infer that Congress meant to prevent those expenses from qualifying under any subsection. But that conclusion does not follow, particularly given the subsections' different origins. While Congress enacted (B) to adopt the broad *Stoves* test, it added (C) not to *limit* other subsections, but "to overrule earlier Commission decisions that had found that licensing alone did not constitute a domestic industry." *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1329 (Fed. Cir. 2012) ("*InterDigital II*"). This history provides no reason to affirm the majority's test that sales and marketing expenses are counted, but only subject to meeting additional conditions.[3]

**2. The Commission has treated labor and capital expenditures for sales, marketing, warehousing, and distribution inconsistently under §1337(a)(3)(B).**

The Commission argues that it has been "consistent" in excluding the challenged expenses in past decisions, CB32, CB36, CB39-44, suggesting that the Court should defer to its statutory interpretation under *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). Setting aside *Chevron*'s uncertain future (OB47 n.16), an agency receives no deference when a statute is unambiguous. *Chevron*,

---

[3] The Commission's authorities are not to the contrary. In *Acosta v. Local Union 26, UNITE HERE*, 895 F.3d 141, 144 (1st Cir. 2018), Congress had narrowed the language of a *single* provision from "inspect and copy" to "inspect." *See also Solar Energy Indus. Ass'n v. United States*, 86 F.4th 885, 895 (Fed. Cir. 2023) ("the statute simply does not contain the narrowing limitation the trade court read into it").

467 U.S. at 842. And this Court has never held any part of §1337(a)(3) ambiguous—it has applied plain meaning without deference. *Lelo*, 786 F.3d at 883; *InterDigital*, 707 F.3d at 1300.

Nevertheless, the Commission has *not* expressed a consistent view of the statute. Instead, it has announced conflicting views and commented on its own lack of consistency. *Certain Toner Supply Containers & Components Thereof (II)*, Inv. No. 337-TA-1260, Comm'n Op. at 24 (Aug. 3, 2022) (domestic industry "has become overly complicated, inconsistently applied, and far afield from the inquiry Congress has instructed the Commission to undertake").[4] Those views include that there is no prohibition on crediting expenses like sales and marketing, and that instead, the issue "can only be evaluated" under the qualitative assessment of significance by "looking at complainant's activities as a whole to determine if the nature and extent of those collective activities distinguish it from a 'mere importer.'" Appx00104. But also, that such expenses should never be credited towards the domestic industry requirement. Appx00036 n.29. And also, as the majority held,

[4] The Commission takes inconsistent positions here, proposing (CB32 n.19) that the Court could rule the statute excludes *all* sales and marketing expenses. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) (deference to an agency's litigating position is "entirely inappropriate").

that such expenses are "non-qualifying" but may be considered upon proof of "other qualifying expenses."[5]

The Commission concedes that some of its decisions credit the same type of expenses excluded in this case. CB39. It attempts to justify that inconsistency by claiming that it "did *not* actually rely" on those expenses, CB40 (discussing *Solid State*), credited them when presented with "more traditional…expenses," CB41 (discussing *IVF Products*), or in relatively small amounts, CB44 (discussing *Loom Kits*), or for procedural reasons, CB42-44 (discussing *Percussive Massage Devices*, *Collapsible Sockets*, and *Loom Kits*). But this description shows that the Commission has *not* consistently excluded the challenged expenses but employs at least four different rationales to credit them. The best it can do is claim that it has never relied "substantially" on sales and marketing expenses alone to find a domestic industry. CB39, CB44. But one alleged common thread does not justify a particular interpretation of the statute, let alone the various ones the Commission advances here.

---

[5] Commissioners routinely debate the propriety of categorically excluding expenses. *E.g.*, *Certain Foodservice Equip.*, Inv. No. 337-TA-1166, Comm'n Op. at 10 n.9 (Oct. 29, 2021); *Certain Elec. Shavers*, Inv. No. 337-TA-1230, Comm'n Op. at 13 n.4 (May 3, 2022); *Certain Automated Put Walls & Automated Storage & Retrieval Sys.*, Inv. No. 337-TA-1293, Comm'n Op. at 24 n.20 (Aug. 17, 2023); *Certain Vacuum Insulated Flasks*, Inv. No. 337-TA-1216, Comm'n Op. at 6 n.3 (Feb. 3, 2022).

### 3. A plain reading of the statute would not open the floodgates to "mere importers" or complainants with no connection to the United States.

The Commission argues that applying the statute according to its terms would make the domestic industry requirement meaningless. CB29 n.17, CB35. But that is not so.

This Court holds that the plain language of the statute requires a quantitative assessment of whether the total dollar amount of domestic investment is "significant" relative to the overall investment with respect to the articles at issue. *Lelo*, 786 F.3d at 883-84. But it *also* requires a qualitative assessment of whether that investment is "significant" to the domestic market. *See Lelo*, 786 F.3d at 885; *Certain Percussive Massage Devices*, Inv. No. 337-TA-1206, 2022 WL 59156, at *6-7 (Jan. 4, 2022). That latter assessment consists of looking at the whole of the activity that the quantified investments represent, "in the context of the company's operations, the marketplace, [and] the industry in question" to determine whether they are "important to the articles protected by the asserted patents," "had a direct bearing on the practice of the patent," *Certain Printing & Imaging Devices & Components Thereof*, Inv. No. 337-TA-690, 2011 WL 1303160, at *17 (Feb. 17, 2011), or contributed to the "existence of the products at issue." *Percussive Massage Devices*, 2022 WL 59156, at *7.

As the dissent explained—an argument the Commission failed to address—this qualitative test is the only way to reliably exclude a "mere importer":

> Concerns that a complainant could be a mere importer and therefore not afforded the protections of Section 337 is not something that can be evaluated by looking at complainant's asserted activities one by one and dismissing investments in activities that may also be undertaken by "mere importers." Rather, it is something that can only be evaluated looking at complainant's activities as a whole to determine if the nature and extent of those collective activities distinguish it from a "mere importer."

Appx00104; *see also* Appx00109; OB50-51. The dissent is correct. The qualitative test, by looking to the complainant's activities as a whole, is far better suited to distinguishing "mere importers" from domestic innovators than a line-item assessment of financial statements. And because the qualitative test does so, there is no cause to add requirements to the quantitative assessment not found in the statute.

**B. Lashify proved that there is an economic domestic industry in salon-quality DIY lash extensions and peripherals.**

**1. Lashify showed significant domestic investments in labor and capital with respect to the articles protected by the patents.**

Lashify proved domestic industry through evidence of its multimillion-dollar investments to develop and bring to market the patented articles. This includes over $4 million in labor expenditures and over $12 million in invested capital for domestic activities that include product finishing, quality control and packaging, distribution, customer training and support, sales and marketing activities, and R&D.

OB37-43. No party contests that if these expenditures are credited, Lashify showed a "significant employment of labor or capital" "with respect to the articles protected by the patent" "in the United States." *E.g.*, CB9.

The Commission makes two attempts to avoid crediting the expenses. First, it argues that Lashify "never explained" how these expenses are "labor" or "capital." CB35. But those words take their usual meanings, *Lelo*, 786 F.3d at 883, and the expenses consist of payments to employees and others for services (*i.e.*, labor) and investments in assets to bring its products to market (*i.e.*, capital). The Commission itself has credited the same expenses as "labor or capital" in its past cases. *See, e.g.*, *Percussive Massages Devices*, 2022 WL 59156, at *6-7. No party contested this issue below, and the Commission does not meaningfully contest it now.

Second, the Commission argues that Lashify failed to "prove" that individual line-item expenses were "cognizable." CB44-54. But these arguments apply the Commission's incorrect reading of the statute. In other words, the majority ruled these expenses "non-cognizable" because Lashify failed to prove that they were something *other than* sales, marketing, warehousing, or distribution expenses. Appx00055-00056. So, the Commission argues that Lashify failed to prove its "support and education" expenses were "not [] marketing," (CB46), that it failed to show its warehousing and distribution expenses "go beyond…a mere importer" and "make the final product 'saleable [*i.e.*, that they include domestic manufacturing

steps],'" (CB49), or that its quality control activities were not "normal warehousing/distribution activities," (CB53).[6] These arguments all fail if the Court holds that the Commission must apply the statute as written.

#### 2. Lashify is an innovative U.S. startup and not a mere importer of foreign goods.

Finally, the ruling below rested on the Commission's quantitative assessment, informed by its line-item exclusions. If reversed, the Court should direct that Lashify established economic domestic industry, because qualitative factors all indicate that it is an innovative U.S. company eligible for protection, not a "mere importer." As the dissent noted:

> [A]s a U.S. start-up, Lashify's activities and investments with respect to the protected articles reflect…a business developed and grown in the United States as a result of its founder's innovation efforts in the United States, which includes much more than merely sales and marketing alone.

Appx00104. Lashify created—including through the patents at issue here—an entirely new market segment. Salon-quality DIY lash extensions did not exist before Lashify's innovations, and since their introduction the market has moved towards Lashify's methods and designs, including by importing "knockoffs." Lashify's domestic activities are thus indisputably "important to the articles protected by the

---

[6] Incorporating finishing activities for the D'664 patent also does not make the warehousing/distribution allocation problematic. CB51; Appx00038. The Commission concedes that the ALJ determined this allocation was "proper," and the Commission "agreed." CB9.

asserted patents in the context of the company's operations, the marketplace, [and] the industry in question" and "had a direct bearing on the practice of the patent," *Printing & Imaging Devices*, 2011 WL 1303160, at *17, as well as the "existence of the products at issue." *Percussive Massage Devices*, 2022 WL 59156, at *7. Lashify thus is a domestic innovator, not a mere importer.

The principal contrary arguments contend that such evidence does not relate to the relevant time or is not in the record. CB55-56; RB6-7, RB15, RB21-22. Neither assertion is true. First, domestic industry is assessed as of the time the complaint is filed. *Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1361 (Fed. Cir. 2019). And the facts supporting Lashify's history as a domestic innovator were available and true as of the complaint filing in this case—Lashify and its founder Ms. Lotti had developed, tested, and patented the technology at issue in Los Angeles, resulting in a brand-new market segment for DIY salon-quality lash extensions. OB6-10.[7] The suggestion that these events cannot be credited in the *qualitative* assessment of domestic industry—either because they do not overlap

[7] Respondents' irrelevant arguments do not undermine this evidence. They fault Ms. Lotti for not developing U.S. manufacturing options when the Respondents also manufacture abroad (RB7-8; OB17-21), denigrate her technical knowledge concerning Lashify's manufacturing processes (RB24-26), accuse her of copying them where the record shows the opposite (RB9; *see* Appx50109, Appx41625-41656, Appx48628-48630), and confuse market segments, arguing that DIY lash extensions pre-exist Lashify when Lashify's innovation was to bring salon methods and quality to the DIY category (RB8-9). None of this shows that Lashify is a "mere importer" rather than a U.S. based innovator.

with the line-item expenses offered for the *quantitative* assessment (CB55-56) or because they are not themselves reduced to specific dollar values for the *quantitative* assessment (CB55-56; RB22)—is unsupported by law or logic. They directly relate to the significance of Lashify's "operations, the marketplace, [and] the industry in question." *Printing & Imaging Devices*, 2011 WL 1303160, at *17.

Second, Lashify relied upon record evidence to establish this history. Appx47954-48000. This includes how Ms. Lotti created the Lashify system in the United States, and specifically the Fuse Control Wand, Gossamer lashes, and cartridge at issue, Appx47958, Appx47966-47967, Appx47971-47974, how she "used a jewelry soldering tool, modeling clay, and other materials to create prototypes of the Fuse Control Wand," Appx47959, and how she 3D-printed various designs. Appx47963-47964. And Ms. Lotti's testimony about her "obsession" with creating a new lash product, Appx66138, that she "made the product [herself] at home," Appx66156, turning her home into "a creative factory" while experimenting with different ways to make her new eyelashes "for 24 hours a day until I figured it out." Appx66160-66162. Respondents introduced some of this evidence into the record themselves. Appx66124.

The relevant evidentiary ruling, Order No. 55, struck none of this evidence and was instead a narrow ruling concerning just portions of two witness statements. Appx27867. The ALJ required the parties to exchange written witness statements

in place of direct testimony. Respondents objected to parts of Ms. Lotti's testimony, Appx19061-19064, and the ALJ struck only the identified material. Appx19064, Appx27867.[8] The ALJ did not exclude *any* evidence Lashify cited or preclude Lashify from presenting its history as relevant to the economic domestic industry inquiry. Appx27867.

Nor can this qualitative evidence be reduced to just the $37,000 line item for R&D in Lashify's financials. RB18-19, RB21-24. Not only do Ms. Lotti and multiple other employees continue to devote substantial efforts in the U.S. to research and development, Appx48034-48039, Appx48777-48782, that argument fails to credit the original innovation that resulted not just in the patents, as well as the widespread public recognition that Lashify created an entire new industry segment. OB8-10.

Finally, while the Commission concedes that its ruling rests on its line-by-line exclusion of expenses, it also suggests that it also "considered the nature of Lashify's activities." CB57. That is incorrect—quantitative and qualitative significance are separate inquiries, *see Percussive Massage Devices*, 2022 WL 59156, at *6-7, and to the extent either the ALJ or the Commission addressed "the nature of Lashify's

[8] Lashify complied with the ALJ's order by redacting the stricken testimony from both statements. *Compare* Appx47948-48066 and Appx48067-48084 *with* Appx72432-72550 and Appx72551-72571. And Lashify cited only the *redacted* versions. OB6-10.

activities," they did so only to justify excluding expenses from the quantitative analysis. *See* Appx00264, Appx00059-00060. Indeed, the Commission confirmed that it did not undertake a qualitative analysis by ignoring Lashify's history and origin and criticizing the dissent for failing to explain how that background is "relevant to the analysis of Lashify's *expenditures*." Appx00049-00050, Appx00050 n.37. This Court should therefore reverse, or at minimum remand for the Commission to perform a qualitative assessment of the significance of Lashify's domestic activities after crediting the excluded expenses.

### C. There are no alternative grounds to affirm the domestic industry ruling.

Respondents contend that this Court may affirm a ruling of no economic domestic industry even if Lashify prevails on all issues raised. They contend that the three eyelash products tested by Lashify's expert are not representative of all 16 of its domestic industry eyelash products, RB46–47, and therefore Lashify's expense allocations for the '984 patent (which include all 16), are overbroad.

This is incorrect. First, at a *minimum*, Lashify would be entitled to an exclusion order for the D'664 and D'416 patents. The Commission ruled all elements of a violation met for those patents except for economic domestic industry, Appx00006, Appx00066, and no one disputes that Lashify's expenditures for the products asserted to practice these patents are properly allocated. CB9.

Moreover, as to the ’984 patent, Lashify presented extensive supporting evidence. It explained that the domestic industry products are made by just three processes. Appx48005-48019, Appx48141-48151. Lashify’s expert tested a product made from each process, Appx48387-48445, and concluded that his analysis would apply to the other products made by the same process and using the exact same materials and polymers. Appx35148-35152, Appx40013, Appx48105-48107 Appx48110, Appx48148-48151. This is an exceedingly common expert practice, not a failure of proof. *See Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350 (Fed. Cir. 2010) (expert’s method of “selecting representative accused products [was] reasonable and well thought out”).

Moreover, the sufficiency of Lashify’s expert testimony to establish that one product is not materially different from others is an issue for the fact finder. And here, the ALJ and Commission “declined to rule” (RB46) and made no fact findings. Appx00020, Appx00199. Respondents’ request that this Court find facts based on attorney argument about an alleged “dearth of evidence of representativeness” is thus improper, as the Court cannot “uphold the agency’s decision on [a] ground not ruled on by the agency.” *InterDigital II*, 690 F.3d at 1329.

## II. THE COURT SHOULD REVERSE THE ERRONEOUS CONSTRUCTION OF "HEAT FUSED" AND VACATE THE NONINFRINGEMENT AND TECHNICAL DOMESTIC INDUSTRY RULINGS THAT REST ON IT.

The ALJ ruled that the construction of "heat fused" as "joined using heat" is consistent with the intrinsic record. Appx00312. Neither the Commission nor Respondents contest this ruling. Instead, they argue the construction requires further elaboration to avoid a claim scope that covers gluing lash fibers together or using heat to curl them. But those examples do not involve lash fibers "*joined* using *heat*," and thus provide no reason to reject that construction. The ALJ's elaboration authored new claim limitations—requiring "applying heat…to form a single entity" "that cannot easily be separated"—that conflict with the specification. The Court should vacate and remand the non-infringement and no technical domestic industry determinations that rest on the ALJ's incorrect construction.

### A. The correct construction of "heat fused" is "joined using heat."

The intrinsic record supports the construction of "heat fused" as "joined using heat." OB54-55. Indeed, all parties incorporated this concept into their proposed constructions, disputing only whether the heat must melt the lash fibers. *See* Appx08718.

On appeal the Commission objects to the construction only because it purportedly covers the use of glue to create a connection between lash fibers. CB60-65; *see also* RB38-39. But that is plainly incorrect. The construction—"joined using

heat"—requires that *heat* contribute to the joinder *of the fibers*. OB59-60. Fibers held together only by the natural adhesive properties of a volume of glue between them are not "joined using heat" and that is so *even if* that glue is heated or cured during the process.

The Commission therefore contends (CB64; *see also* RB39) that the Court must construe the term such that *any* use of glue is outside the claim. But nothing in the patent suggests that a manufacturing process that creates heat-fused connections falls outside the claim just because it uses glue. OB59. Indeed, the Commission itself cites such an embodiment. CB65 ("The specification explains that after the hairs/fibers are heat fused…, the clusters may then be glued to each other"). The Commission argues the specification's distinction between use of adhesives and the "hot melt" method embodiment (Appx00348 (4:46-48)) disclaims the former. But disclaimer requires an unequivocal disavowal, *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003), and here the specification observes only that an adhesive can be an alternative to a "hot melt" embodiment—there is no disavowal, particularly considering the embodiment that expressly incorporates adhesives. Appx00350 (7:63-8:3). The construction "joined using heat" correctly excludes adhesive-only, non-heat-caused connections or joinder of polymers, while not excluding the embodiments that describe using adhesives along with heat fusion.

The Commission falls back to arguing that Lashify forfeited the position that "heat fused" should be construed as "joined using heat." CB60-61. But forfeiture is "the failure to make the timely assertion of a right." *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020). And Lashify timely proposed "joined using heat" to the ALJ (Appx08252-08255) and to the Commission (Appx30077-30079), preserving the issue for appeal. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999). Lashify does not forfeit, as the Commission contends, because it proposed an alternative construction—"joined together by applying heat so artificial hairs/clusters connect," Appx08406-08407, *see also* Appx08600 (33:4-7)—that the ALJ *also* rejected. *See, e.g.*, *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1278 n.7 (11th Cir. 2015) (offering a "fallback" position does not waive appellate review).[9] Nor did Lashify forfeit its ability to argue the scope of (CB60-61) because the parties consistently have disputed whether "joined using heat" includes non-heat-fused glue-only connections (it does not, and never has) or a process (it does, and always has).[10] "[C]larifying

---

[9] Lashify's proposals are functionally identical: both exclude adhesive-only connections, do not require melting, and do not require fibers to become a "single entity" that is "not easily separated."

[10] The Commission argues that Lashify represented that its construction excluded all processes including glue during the *Markman* hearing. CB61 (citing Appx08642-08643). But Lashify only distinguished between heat-fused connections—which can occur with or without glue—and non-heat-fused, adhesive-only connections. Appx08598, Appx08642-08643; *see also* Appx07789, Appx23800-23802, Appx28845 (citing Appx35158-35176, Appx48105-48117, Appx48206-48210).

or defending the original scope" of a proposed claim construction is appropriate where the appellant preserved its right to appeal that construction. *See Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1381 (Fed. Cir. 2022). The Commission's "forfeiture" arguments fail.

Respondents' criticisms are similarly unavailing. Respondents argue that "joined using heat" fails to give meaning to words in the claim or renders them surplus. RB37-39. But in the claim, "heat fused" and "heat fused connection" are both used to refer to fibers "joined using heat." The construction gives meaning to the words of the claim—*and* distinguishes a "heat-fused" connection from a generic "connection"—because it specifies that the connection is made using *heat*.

Nor is there a claim differentiation problem based on the use of both "heat fused" and "heat-fused connection" in the claims. These terms refer to the same concept—just like describing two metal objects both as "welded" and as having a "weld connection." *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, 2005 WL 67083, at *1 (D. Del. Jan. 5, 2005) (construing "weld connection" to mean "a weld").[11] Respondents themselves proposed a *single* construction for both "heat fused" and "heat-fused [connection]." Appx08718. Their new argument that the word "connection" creates a problem such that "heat fused" is not "read the same

[11] *See Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (applying same meaning to terms used interchangeably).

across claims" lacks credibility.[12] The construction "joined using heat" does not render either "heat" or "fused" meaningless. It presents the correct interpretation of "heat-fused" to "assign[] a fixed, unambiguous, legally operative meaning to the claim." *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005).

Finally, Respondents argue that Lashify's construction would bring the "decades-old lash-curling technique" described in *Udes* within the claim. RB3, RB41-42. In *Udes*, the lashes are not heat-fused but *woven together* according to conventional methods and curled using heat. *See* Appx07919-07922 at Fig. 9, 2:16-4:46, Cls. 1-2. During prosecution of the '984 patent's parent application, Lashify introduced the "heat-fused" limitation to distinguish *Udes*'s disclosure of *curling* lashes from invention's *joining* them using heat. Appx52639. As the ALJ ruled, this "is not inconsistent with a construction of 'heat fusion' as 'joined using heat,'" because "[t]he parties agree that using heat to curl lashes is not 'heat fusion.'" Appx00313. Nowhere did Lashify disclaim a process that both heat-fuses fibers *and* imparts a curl. *See* RB41-42.[13]

***

[12] The ALJ likewise provided a single construction for the terms "heat-fused," "heat-fused [connection/together]" and "heat fusion." *See* Appx00307-00314.

[13] Nor did Lashify disavow all use of glues or adhesives by distinguishing *Udes*. CB64. The examiner relied on *Udes* for disclosing fibers exposed to heat source (to curl them). Appx52471. Lashify did not disavow adhesives merely by clarifying that its invention fuses rather than curls fibers. *Omega*, 334 F.3d at 1324.

In sum, no party has identified a reason sufficient to construe "heat fused" as taking something other than its plain and ordinary meaning, "joined using heat."

### B. The ALJ's construction is incorrect because it includes three limitations that conflict with the specification.

#### 1. The "single entity" requirement contradicts the claims and specification.

The ALJ's required fibers to form a "single entity," Appx00313, despite no intrinsic support for this requirement and the ALJ's finding that heat fusion can join fibers below their melting point, Appx00311-00312.

No party meaningfully defends this construction. The Commission adopted the ALJ's ruling that a "single entity" meant fibers that had melted and merged such that "one cannot discern any individual fibers." Appx00165-00166, Appx00205-00206. Now, the Commission and Respondents present a conflicting interpretation that requires no melting and only a connection formed at a single point between fibers. CB62-63 (noting that the "heat seal" method of heat fusion "requires heat to seal the ends [of two fibers] together"); CB64; RB38-39 (citing Appx00348 ("The intersecting portions of the crisscrossing artificial hairs could also be connected")); RB43-44. Indeed, the Commission goes so far as to ask the Court to reinterpret the construction and rule that a "single entity" *does not mean* "merging them [*i.e.*, the lashes] into one whole." CB64. Put another way, it asks this Court to rule that

"single entity" does not mean what it says and fails to explain how the intrinsic record supports the requirement.

The lack of intrinsic support is unsurprising. The "single entity" limitation came from a dictionary definition of "fuse." OB57-58; RB42-43; CB65 (citing Appx00313, Appx08403-08404). Respondents claim that the ALJ properly relied on extrinsic evidence because the intrinsic evidence was "clear." RB42. But there is no need to consult extrinsic evidence where the intrinsic evidence provides a clear meaning, and relying on extrinsic evidence to alter that meaning is improper. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005). Here, the ALJ applied an excerpt from one dictionary definition *without* explaining how it reflected the plain and ordinary meaning of "heat fused" *as used in the patent*. As nothing in the patent requires melting or merging fibers into an indistinct whole, the district court's reliance on extrinsic evidence to contradict the intrinsic record was legal error. *See, e.g.*, *Advanced Fiber Techs. v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1374-75 (Fed. Cir. 2012). This error is not excused merely because Lashify cited to the definition, *see* RB42 (citing Appx08403), CB65, to argue that it refuted a *different* argument that "fusing" requires melting. OB57 n.21; Appx08403.

Respondents argue that the single entity requirement is consistent with the patent's disclosure of a temperature range where certain materials being to melt, RB40, and the ALJ's finding that heat fusion does not require melting fibers. RB44;

Appx00311-00312. Both arguments are incorrect. The patent says nothing about a single entity or what temperatures are required to form one. Appx00350 (7:36-39). And the ALJ *did* require melting because it and the Commission repeatedly found that below-melting manufacturing temperatures show a lack of heat fusion. *E.g.*, Appx00168, Appx00176, Appx00206, Appx00030.

**2. The "not easily separated" requirement contradicts the claims and specification.**

Second, the ALJ held that a "single entity" requires "more than simply joining together structures that could then easily be separated." Appx00313. That clarification was key to the ALJ's determination that some products were not "heat fused" because their fibers "easily [] separated" when pulled apart. *E.g.*, Appx00156-00157. This requirement improperly imports an undefined term of degree—"easily"—into the construction of heat fused, and makes no sense in the context of a product meant to mimic delicate human eyelashes. OB59-60. The ALJ cited no evidence to support this requirement, Appx00313, and no party identifies any on appeal.

The Commission and Respondents argue only that the ALJ's ruling was not part of its claim construction. CB65; RB44-45. But the ALJ's clarification is a "derivative [claim] construction" of the single entity requirement. *Advanced*, 674 F.3d at 1374. And that is further proved by the ALJ repeatedly wielding the not-easily-separable requirement to conclude that products which could easily be

destroyed were not heat fused. Appx00156-00157, Appx00166-00168, Appx00177-00179, Appx00183-00184. The ALJ's construction must be reversed.

### 3. The application of heat requirement improperly excluded a process.

Third, the ALJ included the "applying heat" language in its construction, Appx00313, and interpreted that requirement to exclude a process because, according to the ALJ, a process does not "apply" heat, but instead applies "a type of energy," Appx00202, that creates heat as a byproduct.

Respondents argue that this is a meaningful distinction and therefore that the ALJ was correct. RB45-46. But this conflicts with Respondent's own expert testimony that a process is one of many "commonly known processes involving heat fusion." Appx07705; Appx07756-07757 (describing a process as "one of the most widely used welding methods for joining thermoplastics").

And while Lashify agreed to the "applying heat" language as a compromise, RB45 (citing Appx08600 (33:4-7)), it had no reason to believe it would be reinterpreted to change the claim scope to exclude a process both parties understood was a "commonly known" and "widely used" method of heat fusion. Such a

construction cannot be correct.[14] Both the Commission and Respondents argue that Lashify is incorrect to label the ALJ's treatment of a process a claim construction issue. CB65-66; RB45-46. But if "the outcome of [a tribunal's] analysis of the claim term establishes [its] scope", the tribunal "has most likely construed the claim." *Google LLC v. EcoFactor, Inc.*, No. 2022-1750, 2024 WL 463231, at *4 (Fed. Cir. Feb. 7, 2024). That assessment controls regardless of "[t]he point in the proceeding at which the analysis occurs" or whether the tribunal labels its construction a "finding[]." *Id.* Here, even if it did "not recognize that it [was] construing a claim," *id.*, the ALJ did so by determining a process falls outside the claims. But even if this Court disagrees, it can still review Lashify's challenge. *In re Aspen Aerogels, Inc.*, 835 F. App'x 587, 589 (Fed. Cir. 2020) (reviewing for substantial evidence after determining the issue was a fact dispute, not claim construction). And the outcome here is the same whether reviewed *de novo* or for substantial evidence because there is no dispute that a process is a form of heat fusion. *See* Appx07705, Appx07756-07757.

[14] The Commission, by contrast, argues that the ALJ's construction does *not* in fact exclude a process, CB65-67, but fails to explain why—particularly in light of the ALJ's further rulings to that effect.

**CONFIDENTIAL MATERIAL REDACTED**

### C. The ALJ's and Commission's technical findings depend on an incorrect claim construction and do not provide alternative grounds for affirmance.

Respondents argue that the Court can affirm even under the construction "joined using heat" because the Commission found that Lashify's domestic industry products would still lack heat fused fibers. RB35-36. Specifically, Respondents argue that the Commission's determinations that one set of Lashify's domestic industry products are "joined with glue, not heat," Appx00022, and that Lashify's other domestic industry products likewise lack heat-fused connections, Appx00028-00029, do not rely on the appealed construction.

Respondents are incorrect. As the Commission acknowledges by arguing those same findings resulted from application of the *ALJ's construction*, CB66-68, the technical determination rests upon the ALJ's construction. The record lacks any findings regarding whether any products are heat fused under the correct construction, and thus remand is required to assess these technical issues under that construction in the first instance.

Lashify's domestic industry products are produced by Manufacturer I and Manufacturer II. OB8, OB26-27. Manufacturer I heat seals the fibers and then places them in an oven, and Manufacturer II adds a thin layer of glue along loose fibers before fusing them via a process. OB13-14. Lashify showed both processes met even the ALJ's construction of heat fused. Appx48387-48425.

**CONFIDENTIAL MATERIAL REDACTED**

Respondents argued otherwise, relying on the "applying heat" and "single entity" limitations, including because the fibers were "easily separable." Appx72151-72153, Appx71851, Appx71865, Appx71887, Appx71897.

The technical findings relied on the ALJ's construction. The ALJ found the Manufacturer II fibers held together by glue and not heat fused, because the two-to-four-second manufacturing process does not result "in heat that would cause the fibers to join to *form a single entity*." Appx00020. The Commission elaborated by crediting Respondents' testing to conclude that the fibers were not "'a single entity' as required by the ALJ's construction of heat fused." Appx00021. And by relying on Respondents' expert's testimony that heat fusion via a process requires melting the fibers to result in heat fusion. Appx00022 (citing Appx61235). But Respondents' expert asserted that melting is necessary to achieve the "stronger bond" required "to thoroughly seal something into a single entity in which the pieces are not easily separable." Appx71891. Thus, the Commission's technical determination rested on the construction. *See* CB66-67.

The same is true for the Manufacturer I products. The Commission credited the ALJ's finding the Manufacturer I process employs temperatures that "are not high enough to result in 'heat fused' fibers." Appx00029. Because if "the melting temperature of the lash material is never reached," "the individual lashes could not have been heat fused to form a single entity." Appx00030; CB68 (noting that the

ALJ credited Respondents expert's testimony that melting was required to "form a single entity"). Respondents ignore these bases for the Commission's decision and focus on evidence they claim shows a lack of "merging" of fibers. RB36 (citing Appx00028-00029). But here too the Commission relied on Respondents' expert's analysis to conclude there was no evidence of heat fusion between fibers. Appx00029 (citing Appx72151-72153—analysis that, as noted above, is grounded in the ALJ's construction because it requires melting to form a single entity, Appx71891).

There are no findings that any products lack heat fused connections under Lashify's proposed construction. And there is insufficient evidence for this Court to make that determination. Remand is required "to resolve any new factual issues raised by the new claim construction." *Electro Sci. Indus. v. Dynamic Details, Inc.*, 307 F.3d 1343, 1350 (Fed. Cir. 2002).

## CONCLUSION

The Court should reverse the challenged rulings and remand for further proceedings.

February 16, 2024

FENWICK & WEST LLP

By: *_/s/ Saina S. Shamilov_*
Saina S. Shamilov

*Counsel for Appellant Lashify, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Circuit Rule 28.1(b)(1)(A). This brief contains 6,991 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief uses a proportionally spaced typeface using Microsoft Word and 14-point Times New Roman font.

February 16, 2024

By: */s/ Saina S. Shamilov*
Saina S. Shamilov
FENWICK & WEST LLP

Attorneys for Appellant
*Lashify, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 16, 2024, I caused the foregoing **NONCONFIDENTIAL REPLY BRIEF OF APPELLANT LASHIFY, INC.** to be served on the following parties as indicated below:

| | |
|---|---|
| Lynde Faun Herzbach<br>Wayne W. Herrington<br>Michelle W. Klancnik<br>**INTERNATIONAL TRADE COMMISSION**<br>Office of the General Counsel<br>500 E Street, SW<br>Washington, DC 20436<br>202-205-2000<br><br>*Attorneys for Appellee International Trade Commission* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email<br><br>lynde.herzbach@usitc.gov<br>wayne.herrington@usitc.gov<br>michelle.klancnik@usitc.gov |
| Mark A. Miller<br>Elliot Hales<br>**DORSEY & WHITNEY LLP**<br>111 S Main Street. Suite 2100<br>Salt Lake City, UT 84111<br>801-933-4068<br><br>Hui Shen<br>**DORSEY & WHITNEY LLP**<br>1401 New York Avenue NW<br>Washington, DC 20005<br>202-538-0381<br><br>*Attorneys for Intervenors Qingdao Hollyren Cosmetics Co. Ltd., dba Hollyren, Qingdao Lashbeauty Cosmetic Co., Ltd., dba Worldbeauty, and Qingdao Xizi International Trading Co., Ltd., dba Xizi Lashes* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email<br><br>miller.mark@dorsey.com<br>hales.elliot@dorsey.com<br>shen.hui@dorsey.com |

| | |
|---|---|
| Michael Hawes<br>Lori Ding<br>**BAKER BOTTS LLP**<br>910 Louisisana Street<br>Houston, TX 77002-4995<br>713-229-1234<br><br>Theodore W. Chandler<br>**BAKER BOTTS LLP**<br>1801 Century Park East, Suite 2400<br>Los Angeles, CA 90067<br>213-202-5702<br><br>Thomas Chisman Martin<br>Lisa M. Kattan<br>**BAKER BOTTS LLP**<br>700 K Street, NW<br>Washington, DC 20001<br>202-639-7700<br><br>*Counsel for Intervenors*<br>*Kiss Nail Products, Inc., Ulta Salon, Cosmetics & Fragrance, Inc., Walmart, Inc., and CVS Pharmacy, Inc.* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email<br><br>ted.chandler@bakerbotts.com<br>Tommy.Martin@BakerBotts.com<br>lisa.kattan@bakerbotts.com<br>michael.hawes@bakerbotts.com<br>lori.ding@bakerbotts.com |
| Jason R. Bartlett, Esq.<br>**MAURIEL KAPOUYTIAN WOODS LLP**<br>450 Sansome Street, Suite 1005<br>San Francisco, CA 94111<br>415-738-6334<br><br>Rory Jeffrey Radding<br>**MAURIEL KAPOUYTIAN WOODS LLP**<br>15 W 26th Street<br>New York, NY 10010<br>212-524-6053<br><br>*Counsel for Intervenors* | [ ] By United States Mail<br>[ ] By Legal Messenger<br>[X] By Electronic CM/ECF<br>[ ] By Overnight Express Mail<br>[ ] By Facsimile<br>[ ] By Email<br><br>jbartlett@mkwllp.com<br>rradding@mkwllp.com |

| | |
|---|---|
| *Artemis Family Beginnings, Inc., dba Lilac St. and Alicia Zeng* | |

February 16, 2024

By: */s/ Saina S. Shamilov*
Saina S. Shamilov
FENWICK & WEST LLP

Attorneys for Appellant
*Lashify, Inc.*