Office of the General Counsel

UNITED STATES INTERNATIONAL TRADE COMMISSION

WASHINGTON, DC 20436

May 13, 2024

The Honorable Jarrett B. Perlow
Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

**Re: *Lashify, Inc. v. ITC*, Appeal No. 23-1245; Fed. R. App. P. 28(j) Notice of Supplemental Authority**

Dear Mr. Perlow,

Pursuant to Fed. R. App. P. 28(j), Appellee International Trade Commission provides the attached decision (*Zircon Corp. v. ITC*, Appeal No. 2022-1649 (Fed. Cir. May 8, 2024)) as supplemental authority. The *Zircon* decision supports two arguments in Appellee-ITC's brief (ECF Nos. 59, 60).

First, *Zircon* confirms that when, as here, each asserted patent covers only one domestic industry product, a complainant must prove a domestic industry exists for *each* patent. ITC Br. 48-52, 56-58. In that scenario, the complainant cannot rely on cumulative expenditures in all domestic industry products to meet its burden to show that the economic prong is satisfied for each patent. *Id.* Instead, the complainant must separately present the expenditures for each specific product covered by each asserted patent. *Id.* Thus, Lashify's failure to separately present its warehousing/distribution expenditures for the utility patent and the two design patents is fatal to its appeal. *Id.*

Second, the Court recognized that an excluded declaration was neither before the Commission nor part of the appeal, where Appellant did not seek review of the grant of a motion *in limine* excluding that evidence. ITC Br. 55-56. Similarly, Lashify did not seek Commission review of the Administrative Law Judge's grant of a motion *in limine* excluding Lashify's sweat equity evidence. *Id*. As such, that evidence was neither before the Commission nor is it part of this appeal. *Id.*

Respectfully submitted,

*/s/ Lynde F. Herzbach*
Lynde F. Herzbach

*Counsel for Appellee*
*International Trade Commission*

cc: Counsel of Record via ECF

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENTS

This letter complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure because the body of the letter contains 226 words, which does not exceed the maximum authorized by Fed. R. App. P. 28(j) of 350 words.

*/s/ Lynde F. Herzbach*
Lynde F. Herzbach
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-3228
Lynde.Herzbach@usitc.gov

*Counsel for Appellee*
*International Trade Commission*

Date: May 13, 2024

# United States Court of Appeals for the Federal Circuit

---

**ZIRCON CORP.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**STANLEY BLACK & DECKER, INC., BLACK & DECKER (U.S.), INC.,**
*Intervenors*

---

2022-1649

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1221.

---

Decided: May 8, 2024

---

JOHN R. HUTCHINS, Banner & Witcoff, Ltd., Washington, DC, argued for appellant. Also represented by PAUL T. QUALEY, BRADLEY CHARLES WRIGHT; OMAIR MAQSOOD FAROOQUI, Palo Alto Legal Group, PC, Palo Alto, CA.

BENJAMIN S. RICHARDS, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee. Also represented by WAYNE W. HERRINGTON, SIDNEY A. ROSENZWEIG.

Case: 22-1049 Document: 86 Page: 2 Filed: 05/10/2024



BRYAN PATRICK COLLINS, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, argued for intervenors. Also represented by JACK S. BARUFKA, ROBERT M. FUHRER; THERESA ANN ROOZEN, Washington, DC; KECIA JANNELL REYNOLDS, Paul Hastings LLP, Washington, DC.

---

Before LOURIE, BRYSON, and STARK, *Circuit Judges*.

BRYSON, *Circuit Judge*.

In 2020 appellant Zircon Corp. filed a complaint in the United States International Trade Commission ("the Commission") alleging a violation of section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337. Section 337 prohibits "[t]he importation into the United States, the sale for importation, or the sale within the United States after importation" of articles that infringe a U.S. patent. *Id.* § 1337(a)(1)(B)(i). The Commission instituted an investigation based on Zircon's complaint. A Commission Administrative Law Judge ("ALJ") issued an initial determination in the investigation finding no violation of section 337. On review, the Commission affirmed the ALJ's finding of no violation. We affirm.

I

A

This case involves electronic stud finders. A wall stud is a wooden board used in the framing of a building. After a building is constructed, the studs are not visible because they are installed behind material such as drywall that forms the wall surfaces in the interior of the building. A stud finder is a device used to locate studs behind the wall surfaces so that, for example, items can be secured to the wall by being attached not just to the drywall, but also to the studs behind the drywall.

Zircon manufactures and sells electronic stud finders. Zircon owns several patents related to electronic stud finder technology, including the patents at issue in this case: U.S. Patent No. 6,989,662 ("the '662 patent"); U.S. Patent No. 8,604,771 ("the '771 patent"); and U.S. Patent No. 9,475,185 ("the '185 patent"). The '662 patent describes a mechanism for automatically recalibrating a stud finder. Claim 1 is representative:

> 1. A method of recalibrating a stud sensing device for finding a location of a stud positioned behind a surface, the method comprising the acts of:
>
> holding the stud sensing device at a first location on the surface;
>
> placing the stud sensing device in an [sic] calibration mode;
>
> sensing a first density at the first location in the calibration mode;
>
> setting a calibration value based on the first sensed density;
>
> placing the stud sensing device in an operating mode;
>
> moving the stud sensing device to a second location on the surface;
>
> sensing a second density at the second location;
>
> setting a second density value based on the second sensed density;
>
> the stud sensing device determining if it was calibrated over or near a stud; and
>
> the stud sensing device recalibrating itself if it determined that the stud sensing device was calibrated over or near the stud.

'662 patent at 7:49–8:3.

The ’771 and ’185 patents describe grips on a hand tool or stud finder that provide an axis of rotation. Claim 1 of the ’771 patent is representative:

> 1. A hand tool for sensing a measurement behind a target surface, the hand tool comprising:
>
> a housing;
>
> a sensor coupled in the housing; and
>
> a grip having a pair of three-dimensional concave finger holds positioned at opposite sides of the grip to provide an axis of rotation.

’771 patent at 6:31–37.

Claim 1 of the ’185 patent is nearly identical to claim 1 of the ’771 patent except for the last clause, which recites “only two depressed finger holds positioned at opposite sides of a grip allowing pivoting to provide an axis of rotation.” ’185 patent at 6:46–52.

B

Zircon’s complaint alleged that the importation and sale of certain electronic stud finders, metal detectors, and electrical scanners by Stanley Black & Decker, Inc. (“Stanley”), and Black & Decker (U.S.), Inc. (“Black & Decker”) violated section 337 of the Tariff Act by infringing various claims of the ’662 patent, the ’771 patent, and the ’185 patent. J. App. 984–1040.[1] To establish a section 337

---

[1] Zircon initially alleged that the accused products also infringed certain claims of U.S. Patent No. 7,148,703 (“the ’703 patent”). The ’703 patent was terminated from the investigation, however, and is not at issue in this appeal. *See Certain Elec. Stud Finders, Metal Detectors and Elec. Scanners*, Inv. No. 337-TA-1221, Comm’n Op., 2022 WL 834280, at *1 n.1 (Mar. 14, 2022) (“*Commission Opinion”*).

violation, Zircon was required to show that "an industry in the United States, relating to the articles protected by the patent . . . exists or is in the process of being established." 19 U.S.C. § 1337(a)(2). This is referred to as the "domestic industry" requirement. Zircon alleged that it met that requirement based on its investment in plant and equipment, its employment of labor and capital, and its investment in the exploitation of the asserted patents. J. App. 1034.

The Commission instituted an investigation naming Stanley and Black & Decker as the respondents. 85 Fed. Reg. 62758, 62758–59 (Oct. 5, 2020). Stanley and Black & Decker disputed Zircon's infringement and domestic industry allegations. They also argued that the asserted claims of the '662 patent are invalid for obviousness and that the asserted claims of the '771 and '185 patents are invalid for anticipation, obviousness, and lack of adequate written description. *See Matter of Certain Elec. Stud Finders, Metal Detectors & Elec. Scanners*, Inv. No. 337-TA-1221, Initial Determination, 2021 WL 5231410, at *13, *45, *67 (Oct. 7, 2021) ("*Initial Determination*").

Following an evidentiary hearing and briefing, the ALJ issued an initial determination on October 7, 2021, finding that the importation and sale of the accused Stanley and Black & Decker products did not violate section 337. *Id.* at *96–97. In reaching that conclusion, the ALJ found that the economic prong of the domestic industry requirement was not satisfied with respect to any of the asserted patents. *Id.* at *97. As to the asserted patents, the ALJ found that certain of the accused products infringed claims 1, 9, and 16 of the '662 patent and that claim 17 of that patent was invalid as obvious. *Id.* at *96. The ALJ further found that none of the accused products infringed any of the asserted claims of the '771 or '185 patents. *Id.* at *96–97.

### C

Zircon sought Commission review of the initial determination. The Commission upheld the ALJ's

determination that there was no violation of section 337, for two independent reasons. *Commission Opinion* at *32.

First, with respect to the domestic industry requirement, the Commission affirmed the ALJ's determination that Zircon had not satisfied the economic prong of that requirement. *Id.* at *28. Before the ALJ and the Commission, Zircon argued that it satisfied section 337(a)(3)(A), (B), and/or (C) for all of its asserted patents. Zircon based that claim on an aggregation of its investments across all its domestic stud finder products, most of which practiced fewer than all the asserted patents. With respect to the '662 patent, Zircon also argued that its research and development expenditures on a computer chip used in the Zircon products satisfied section 337(a)(3)(C). The Commission rejected both arguments.

As to Zircon's aggregation argument, the Commission found that Zircon had not met its burden to establish a domestic industry related to any of its asserted patents. The Commission explained that by aggregating its investments across domestic industry products that practiced different patents or groups of patents, Zircon "failed to provide the Commission with an adequate basis to evaluate the investments and the significance of those investments with respect to each asserted patent." *Commission Opinion* at *28.[2]

---

[2] The ALJ noted that Zircon relied on aggregated data but went on to assess the significance of Zircon's expenditures under section 337(a)(3)(A)–(C). *Initial Determination* at *89 n.14. The ALJ found Zircon failed to show its investments in plant and equipment were significant, because Zircon's domestic expenditures in this category accounted for only a small portion of its overall expenditures due to its heavy reliance on overseas manufacturing

As to Zircon's argument directed to the '662 patent, the Commission affirmed the ALJ's determination that the evidence Zircon relied on to attribute a particular portion of its research and development expenditures to the development of the computer chip used in its products was unreliable. *Id.* at *32; *Initial Determination* at *93–94.

Second, the Commission found each of the claims of the '662, '771, and '185 patents that were before the Commission were either invalid or not infringed. The Commission found that all the asserted claims of the '662 patent would have been obvious in view of four prior art references; that several claims of the '771 and '185 patents were invalid as anticipated by or obvious in light of Zircon's original stud finder; and that several of the claims of the '771 and '185 patents were not infringed. *Commission Opinion* at *16, *20–21, *23–25. Zircon appealed.

II

As noted, in order to obtain relief under section 337 a complainant must show that "an industry in the United States, relating to the articles protected by the patent, . . . exists or is in the process of being established." 19 U.S.C. § 1337(a)(2). A complainant can satisfy that requirement by showing that, "with respect to the articles protected by the patent," there is "(A) significant investment in plant

---

facilities. *Id.* at *89–90. The ALJ found Zircon failed to show its employment of labor or capital was significant after excluding Zircon's expenditures on sales and marketing, and that Zircon failed to show its research and development expenditures were substantial, because it did not establish a sufficient nexus between those expenditures and its domestic industry products. *Id.* at *90–93. The Commission took no position on that portion of the ALJ's analysis because it viewed aggregation as a threshold issue. *Commission Opinion* at *29.

and equipment; (B) significant employment of labor or capital; or (C) substantial investment in its exploitation, including engineering, research and development, or licensing." 19 U.S.C. § 1337(a)(3)(A)–(C). That provision is referred to as the "economic prong" of the domestic industry requirement.[3]

The Commission held that Zircon did not meet its burden to show that the economic prong of the domestic industry requirement was satisfied. *Commission Opinion* at *28. Throughout these proceedings, Zircon has relied on evidence of its cumulative expenditures on all 53 of its domestic industry products to argue that its investments in plant and equipment, labor or capital, and/or research and development have been significant or substantial. Zircon has acknowledged, however, that not all 53 products practice all three of the asserted patents. Rather, Zircon's evidence showed that of the 53 products, 14 practice all three of the asserted patents; 21 practice both the '771 and '185 patent; 16 practice only the '662 patent; and two practice only the '771 patent. *See* J. App. 14722–23, Q/A 42, 4742. Zircon did not allocate its expenditures on its 53 stud finder products separately with respect to each of its products or each of the asserted patents. The Commission found that Zircon's failure to do such an allocation precluded the Commission from evaluating the significance of Zircon's investments with respect to each asserted patent. *Commission Opinion* at *28.

---

[3] The domestic industry requirement also has a "technical prong," which requires the complainant to show that its domestic industry products are "protected by the patent" at issue. 19 U.S.C. § 1337(a)(2); *see Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1361 (Fed. Cir. 2019). There is no dispute on appeal that the technical prong is satisfied in this case.

Zircon argues that the Commission erred by requiring a patent-by-patent breakdown of its investments and that, in doing so, the Commission departed from its "flexible, market-oriented approach to domestic industry." *Certain Wireless Devices with 3G and/or 4G Capabilities & Components Thereof*, Inv. No. 337-TA-868, USITC Pub. 4475, Initial Determination at 413 (July 29, 2013). In response, the Commission and the intervenors argue that while the Commission has the flexibility to credit various ways of showing significant or substantial investments in a domestic industry, the complainant must, as a threshold matter, provide the Commission with sufficient evidence to show that its domestic investment as to the articles protected by each patent is significant under section 337(a)(3)(A) or (B) or is substantial under section 337(a)(3)(C). Because Zircon failed to present a "reasonable allocation method[] to estimate the amount of [Zircon's] investments that can be attributed to each asserted patent," the Commission held that Zircon had failed to satisfy the statutory requirement that it establish the existence of an industry relating to articles "protected by the patent," as required by section 337. *Commission Opinion* at *30. We agree and conclude that substantial evidence supports the Commission's finding that Zircon failed to meet that threshold.

## A

The parties' dispute centers on the question whether section 337 permits Zircon to rely on investment data aggregated across different products protected by different patents. Zircon argues that section 337 requires only that it tie its expenditures to articles protected by some or all of the three asserted patents and that it need not segregate its investments on a patent-by-patent basis. The Commission and the intervenors argue that the statutory language requires Zircon to establish the existence of a separate domestic industry for articles related to each patent.

Under section 337(a)(2) of the statute, as construed by the Commission, a complainant can establish a section 337 violation by the importation of products that infringe a valid patent only if there is a domestic industry "relating to the articles protected by the patent." 19 U.S.C. § 1337(a)(2). That means that the domestic industry typically must relate to articles that are all protected by a particular patent, not to a group of articles variously protected by different patents.

Section 337(a)(3) similarly requires the complainant to show significant or substantial expenditures on certain activities "with respect to the articles protected by the patent . . . ." 19 U.S.C. § 1337(a)(3). That subsection likewise ties the domestic industry to products protected by a particular patent.

The Commission noted that Zircon's expert "aggregated the domestic industry products for the '662 patent, the '771 patent, and the '185 patent for the purpose of addressing the significance of Zircon's investments" in each of plant and equipment, labor and capital, and engineering and research and development. *Commission Opinion* at *26–27. That aggregation, the Commission held, "is problematic here where multiple patents and numerous domestic products are at issue and where many of those domestic industry products practice less than all of the asserted patents." *Id.* at *28. In that setting, the Commission noted, "aggregating investments in different domestic products that practice different patents effectively precludes the Commission from quantifying the amounts of the investments in each statutory category and determining the significance of Zircon's investments with respect to each of its asserted patents." *Id.* The Commission concluded that "[g]iven the differences between the patents and covered products in this case, Zircon cannot show the existence of an industry in the United States relating to the article protected by the '662 patent by including investments in

articles protected only by the ’771 and ’185 patents and vice versa.” *Id.* at *29.

The Commission summarized the flaw in Zircon’s presentation as follows:

> Per the plain language of section 337, Zircon was required to establish the existence of a domestic industry through significant or substantial investments with respect to articles protected by the ’771 patent in order to establish a violation of section 337 based on infringement of that patent. So too it was required to establish the existence of a domestic industry through significant or substantial investments with respect to articles protected by the ’185 patent to show a violation based on that patent and the existence of a domestic industry through significant or substantial investments with respect to articles protected by the ’662 patent to show a violation based on that patent. But Zircon did not do that. Instead, it aggregated its domestic industry products without regard for whether or which patents they practiced and then argued that a domestic industry in all of its products exists. That is not what section 337 requires, and it does not provide the Commission with adequate information to discern retrospectively whether Zircon could have established a domestic industry for any of its asserted patents under the proper legal framework.

*Commission Opinion* at *29.

The Commission added that Zircon could have attempted to establish a domestic industry based only on its investments in articles that practice all of the asserted claims but that Zircon had made no such effort. *Commission Opinion* at *31. In that regard, the Commission noted that there are 14 domestic industry products that practice all three asserted patents, but that “Zircon has not

identified what portion of its investments are attributable to those products and the Commission lacks sufficient information to perform such an allocation *sua sponte*." *Id.*

This court's precedent is consistent with the Commission's interpretation of section 337. In *Interdigital Communications, LLC v. International Trade Commission*, this court explained that to satisfy the domestic industry requirement based on research and development activities under section 337(a)(3)(C), the complainant must show that those activities "pertain to products that are covered by the patent that is being asserted." 707 F.3d 1295, 1297–98 (Fed. Cir. 2013); *see also Hyosung*, 926 F.3d at 1361 (explaining that the activities encompassed by section 337(a)(3) "must pertain to products covered by the asserted patent") (citation omitted); *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1351 (Fed. Cir. 2013) ("The investments or employment must only be 'with respect to the articles protected by the patent'").

In cases in which all the domestic industry products practice all the asserted patents, it follows from the language of section 337 and our case law that the complainant could satisfy the economic prong as to all asserted patents based on the entire product group. But in cases in which the complainant's products or groups of products each practice different patents, the complainant would need to establish separate domestic industries for each of those different groups of products. *See Certain Audio Digital-to-Analog Converters & Prods. Containing Same*, Inv. No. 337-TA-499, Initial Determination, 2004 WL 3121325, at *61 (Nov. 15, 2004) ("Because complainant is asserting [two patents], and the articles that practice said patents do not overlap, complainant must demonstrate the existence of two domestic industries"). Such a showing might be made, in an appropriate case, without necessarily breaking out investments on a per-patent basis, provided that sufficient evidence is presented to persuade the Commission that the domestic industry requirement is met for each

patent. Hence, we agree with Zircon and the Commission that that investments do not always need to be broken down patent-by-patent.

Zircon argues that in a case such as this one, the Commission's analysis "should proceed on the basis that there is a single industry which exploits the patents." Zircon's Op. Br. at 59. Zircon cites several Commission cases that purportedly support its position. *See Certain Dynamic Random Access Memories, Components Thereof & Prod. Containing Same*, Inv. No. 337-TA-242, USITC Pub. No. 2034, Comm'n Op., 1987 WL 450856, at *28 (Sept. 21, 1987) ("*Certain DRAMs*"); *Certain Laser Bar Code Scanners & Scan Engines, Components Thereof & Prods. Containing Same*, Inv. No. 337-TA-551, Ord. No. 25, 2006 WL 2222926, (July 17, 2006); *Certain Elec. Imaging Devices*, Inv. No. 337-TA-850, Initial Determination, 2013 WL 5956227 (Sept. 30, 2013); *Certain Integrated Circuit Chips*, Inv. No. 337-TA-859, Comm'n Op., 2014 WL 12796437 (Aug. 22, 2014); and *Certain Ground Fault Circuit Interrupters*, Inv. No. 337-TA-739, Comm'n Op., 2012 WL 2394435 (June 8, 2012).

Most of those cases stand for the undisputed principle that, when assessing a complainant's expenditures for purposes of the economic prong, it is permissible to group of different products together if they are all protected by the same patent. *See Certain Elec. Imaging Devices*, 2013 WL 5956227, at *105 (expenses on research and development of a specific article need not "be broken down into the amount related to any specific patents" so long as the activities are directed towards articles that incorporate the patented technology); *Certain Integrated Circuit Chips*, 2014 WL 12796437, at *24 ("[N]o patent-by-patent allocation is required for research and development investment under subparagraph (C)."); *see also Certain Ground Fault Circuit Interrupters*, 2012 WL 2394435, at *51 ("Although product groupings can be a convenient way of organizing multiple products and multiple asserted patents, the

central inquiry is whether [the complainant] can establish domestic industry for at least one product practiced under each of the asserted patents . . . ."). Those cases are not pertinent to the issue in this case, because the products that Zircon sought to aggregate were not all protected by the same patent or patents.[4]

Thus, even though Zircon might have been able to show the substantial or significant investment requirement was met by its investment in the 14 products that practice all three asserted patents, Zircon provided no way for the Commission to assess the significance of Zircon's investment in that product group because Zircon presented its investments in the aggregate for all 53 products, which practiced multiple different combinations of patents. As the Commission explained,

> aggregating investments in different domestic products that practice different patents effectively precludes the Commission from quantifying the

---

[4] Zircon cites the ALJ's initial determination in *Certain Electrical Imaging Devices* as support for its position. Zircon Op. Br. at 58 (citing 2013 WL 5956227, at *105). On review, however, the Commission in that case found the complainant's investments in labor and capital to be significant based on "individual head counts for Apple engineers working on research and development" for the products practicing all patents. 2018 WL 11201935, at *55. Zircon also cites *Certain Laser Bar Code Scanners* for the principle that a complainant "can establish domestic industry for *at least one product practiced under each of the asserted patents*, irrespective of any grouping or format presented in its Motion." 2006 WL 2222926 at *5 (emphasis in original). While that principle is correct, Zircon has failed to establish that its investment in even one product practicing an asserted patent is significant, because it did not disaggregate its expenditures across its 53 products.

> amounts of the investments in each statutory category and determining the significance of Zircon's investments with respect each of its asserted patents. By way of example, 90% of Zircon's investments in its domestic industry products could be attributable to products that practice the '662 patent, and only 10% could be attributable to products that practice the '771 and '185 patents. The opposite could also be true, or the distribution could be fifty-fifty.

*Commission Opinion* at *28.

The only case on which Zircon relies that stands for the principle that where there is substantial overlap between domestic industry products practicing multiple asserted patents, the complainant can rely on its expenditures related to those products to establish a single domestic industry is *Certain DRAMs*. In that case, the complainant was asserting five patents, and the domestic industry products (DRAMs of different densities) each practiced one or more of the asserted patents. 1987 WL 450856 at *28. The ALJ presiding over the investigation required that the complainant show a separate industry for each DRAM density. *Id.* at *27. On review, the Commission explained that the complainant need establish only one domestic industry because "exploitation of all five valid patents . . . result[ed] in the production of a single commercial product, DRAMs." *Id.* at *28. The Commission's finding rested on its conclusion that there was "substantial overlap among the different generations of DRAMs produced in accordance with one or another of the patents in controversy." *Id.*

Zircon argues that the present case follows the same pattern because there is substantial overlap in its domestic industry products (35 of the 53 domestic industry products practice two or more of the asserted patents) and exploitation of all three asserted patents results in the production of electronic stud finders. The Commission rejected that

argument, finding that "the reasoning of *DRAMs* is inapplicable here where there is no record to show 'substantial overlap' of the articles that practice each of Zircon's asserted patents" because less than a quarter of the domestic industry products practice all the asserted patents. *Commission Opinion* at *31.

*Certain DRAMs* has little bearing on the present case, mainly because the language of section 337 was substantially amended in 1988, one year after the Commission's opinion in that case. Prior to the amendment, section 337(a) read as follows:

> Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful . . . .

19 U.S.C. § 1337(a) (1982). Applying that statutory language, the Commission in *Certain DRAMs* determined there was one industry in the subject DRAMs and assessed whether that industry operated efficiently and economically in the United States. 1987 WL 450856, at *31.

The 1988 amendments added the language of section 337(a)(1)(B)–(D), including the language of subsection (a)(2), which defines the industry as one "relating to the articles protected by the patent," and subsection (a)(3), which defines the activities demonstrating that a domestic industry exists. Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1342, 102 Stat. 1107, 1212–13 (1988). It is the language of section 337(a)(2) and (3) that this court analyzed in the post-amendment case law and that the Commission has relied upon to require a

complainant to allocate its expenditures to specific products or product groups. *Certain DRAMs* therefore offers little guidance as to how to assess domestic industry under the current version of section 337.

Furthermore, *Certain DRAMs* is distinguishable. Whereas all of the DRAM products at issue there were manufactured "us[ing] many of the same processes and equipment" as one another and differed only in their storage capacity, 1987 WL 450856 at *28 n.151, here the various patents relate to disparate technologies (e.g., hand grips and recalibration capability).

In sum, it was Zircon's burden to prove the existence of a domestic industry relating to articles protected by each of its patents. To meet that burden, Zircon needed to show that its investments in plant and equipment, labor or capital, and/or research and development, with respect to articles protected by each patent, were significant or substantial. *See* 19 U.S.C. § 1337(a)(3). Thus, Zircon was required to identify, in some manner, how much of its investment in each statutory category was attributable to each group of products. *See John Mezzalingua Assocs., Inc. v. Int'l Trade Comm'n,* 660 F.3d 1322, 1331 (Fed. Cir. 2011).[5] The Commission did not err in finding that Zircon failed to meet that burden when it relied on aggregated evidence of its investments in all domestic industry products

---

[5] At oral argument, Zircon suggested that the Commission could have determined the revenue attributable to each product each year based on Commission Exhibit 28C. Exhibit 28C appears to be a summary of Zircon's total revenues attributable to all domestic industry products, rather than product-by-product. J. App. 6564. Zircon has not shown any error on the part of the Commission in not finding that this exhibit satisfied Zircon's burden to identify how much of its *investments* related to articles protected by each patent.

without allocating those investments among products or product groups relating to each asserted patent, or product groups relating to all the asserted patents.

B

Zircon argues that even if such a breakdown were required, a revenue-based patent-by-patent breakdown of its pertinent expenditures was properly before the Commission and that the Commission erred by refusing to consider that evidence. According to Zircon, the breakdown appeared in a declaration by Zircon's President, Chief Operating Officer, and Chief Financial Officer Ronald Bourque, which was attached to Zircon's initial complaint. *See* J. App. 1046–56. Zircon contends the patent-by-patent allocation of expenditures was properly before both the ALJ and the Commission because the declaration was attached to Zircon's complaint. Zircon points out that Order No. 41 in the case specifically stated that "[p]ursuant to Commission Rule 210.38, the pleadings in this investigation are already part of the record and do not need to be separately admitted as hearing exhibits." *See* J. App. 1271. In addition, Zircon argues that the declaration was cited in Mr. Bourque's witness statement, which itself was admitted as evidence. *See* J. App. 14736–37, Q/A 122–23.

The Commission responds that Zircon cannot rely on Mr. Bourque's declaration before this court because Zircon did not appeal the ALJ's grant of a motion *in limine* excluding Mr. Bourque's declaration, nor did it appeal the Commission's finding that Zircon abandoned its right to rely on the allocation in Mr. Bourque's declaration based on Zircon's failure to raise that issue before the ALJ. *See* J. App. 1258–59 (Order No. 37 on motion *in limine*); *Commission Opinion* at *29 n.25.

The patent-by-patent allocation of Zircon's expenditures was not properly before the Commission, and its exclusion is therefore not part of the appeal before us. In Order No. 37, the ALJ prohibited the use of Mr. Bourque's

declaration as substantive evidence. *See* J. App. 1258. Zircon did not rely on the declaration before the ALJ, nor could it have, given that it did not contest Order No. 37. Zircon did not appeal Order No. 37, but rather argued to the Commission, as it now argues to us, that the declaration was properly in the record pursuant to Order No. 41. As the Commission explained in its opinion, however, Order No. 41 by its terms refers only to the administrative record. *Commission Opinion* at *29 n.25. *Compare* 19 C.F.R. § 210.38 (regulations related to the administrative record), *with* 19 C.F.R. § 210.37 (regulations related to evidence). It is thus irrelevant that Order No. 41 postdates Order No. 37, because Order No. 41 did not reverse the ALJ's exclusion of Mr. Bourque's declaration as substantive evidence.

Zircon is also incorrect that the Bourque declaration must be deemed to have been admitted because it was cited in Mr. Bourque's witness statement. In the cited portion of Mr. Bourque's witness statement, Mr. Bourque was presented with a supplement to his declaration originally numbered CX-0633C. *See* J. App. 15687–88; *see also* J. App. 14736–37, Q/A 122–23. The ALJ excluded both the original declaration (CX-0021C) and the supplement (CX-0633C) from evidence under Order No. 37 but permitted Zircon to renumber excluded exhibits as demonstratives with CDX designations. *See* J. App. 1259. Zircon appears to have followed that direction because in Mr. Bourque's witness statement, Mr. Bourque was asked about the supplement as CDX-0025C. J. App. 14736–37, Q/A 122. It is therefore apparent that the supplement was not attached to Mr. Bourque's witness statement as evidence, but was merely referred to as a demonstrative. Mr. Bourque's witness statement provides no additional evidence on this issue because in his witness statement Mr. Bourque only affirmed that he received a true and accurate copy of his declaration and did not elaborate on any of the details in his declaration.

C

The sole exception to Zircon's aggregated approach to establishing domestic industry is set forth in Zircon's argument that its research and development expenditures on the chip used in its devices were substantial under 19 U.S.C. § 1337(a)(3)(C). The ALJ found that the investments in developing the chip can reasonably be characterized as investments in articles protected by the '662 patent. *Initial Determination* at *93. However, the ALJ found the evidence on which Zircon relied to attribute a portion of its overall research and development investments to the chip to be unreliable. *Id.* In the witness statement submitted to the ALJ and discussed above, Mr. Bourque testified that the chip "accounted for [a specific portion] of Zircon's annual [research and development] spending since 2010." J. App. 14735, Q/A 115. The ALJ found that part of Mr. Bourque's testimony to lack both documentary support and any explanation for how Mr. Bourque arrived at the recited portion. *Initial Determination* at *93; *see* J. App. 14734–35, Q/A 115. The ALJ also did not credit expert witness Walter Bratic's testimony on that issue because Mr. Bratic relied exclusively on Mr. Bourque's testimony and did not review any documents to support his testimony. *Initial Determination* at *93; J. App. 1401, ll. 6–11; *see also id.* at 14398–99, Q/A 39–40. The Commission found no error in the ALJ's determination and adopted the ALJ's finding on that issue. *Commission Opinion* at *32.

Substantial evidence supports the Commission's finding that Zircon failed to meet its burden to prove its investments in the chip were substantial. The ALJ did not err by finding that Mr. Bourque's unelaborated statement regarding the portion of the company's research and development funds that were devoted to developing the chip was not sufficient to show that Zircon's investments in the chip were substantial. *Initial Determination* at *93.

Case: 22-1649 Document: 86 Page: 21 Filed: 05/10/2024



Zircon argues that the Commission ignored its own precedents, which require it to treat the complainant's estimate of its investments as reliable absent "specific persuasive evidence" to the contrary. *See Certain Solid State Storage Drives, Stacked Elecs. Components, & Prods. Containing Same ("Solid State Storage Drives"),* Inv. No. 337-TA-1097, Comm'n Op., 2018 WL 4300500, at *13 (June 29, 2018); *Certain LED Lighting Devices, LED Power Supplies, & Components Thereof ("LED Lighting Devices")*, Inv. No. 337-TA-1081, Comm'n Op., 2018 WL 7350925, at *91 (Dec. 19, 2018). But neither of the cases that Zircon cites supports the proposition that Zircon urges on us.

In *Solid State Storage Drives*, the Commission stated that there is no bar to crediting "sworn witness testimony directed to the domestic industry requirement . . . without further corroboration by underlying documentation." 2018 WL 4300500, at *13. In that case, however, the relevant estimates were corroborated by other employees, and the opposing party provided no specific evidence to the contrary. *Id.* In this case, by contrast, the ALJ found no evidence, documentary or otherwise, to corroborate Mr. Bourque's estimate. *Initial Determination* at *93.

In *LED Lighting Devices*, the Commission cited the relevant language from *Solid State Storage Drives* and further explained that written records are not required to permit the Commission to credit testimony on the domestic industry requirement. 2018 WL 7350925 at *91. But in *LED Lighting Devices*, the witness in question explained how he derived his estimate. *Id.* In this case, Mr. Bourque provided no explanation of how he reached the particular figure in his witness statement, and at the evidentiary hearing before the ALJ, Mr. Bourque admitted that he merely "estimated" that figure. *Initial Determination* at *93.

Zircon also argues that the ALJ and the Commission erred in deeming Mr. Bourque and Mr. Bratic's testimony

Case: 23-1045 Document: 86 Page: 25 Filed: 05/10/2024



unreliable without addressing technical reports that corroborated Mr. Bourque's testimony regarding activity occurring on Zircon's chip. *See* J. App. 10055–77, 10091–257. While those documents showed that Zircon was conducting research and development on the chip, they provided no basis for estimating the amount of funds devoted to that purpose.

The ALJ's credibility determinations and weighing of the evidence are entitled to great weight, and there is no reason on this record to override those determinations. *See Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1336 (Fed. Cir. 2021) ("It is not within our purview to reweigh the evidence or to question the ALJ's credibility determinations."). We therefore decline Zircon's invitation to reverse the Commission's finding that the evidence was insufficient to show that Zircon's investments in the chip were substantial.

III

Zircon also appealed from the Commission's infringement and invalidity rulings regarding the asserted claims of the '662, '771, and '185 patents. Because we have upheld the Commission's ruling on the domestic industry issue, it is unnecessary for us to reach Zircon's challenges to the Commission's infringement and invalidity rulings.

**AFFIRMED**